UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATED OF AMERICA | § | |
| | § | |
| v. | § | CASE NUMBER 18-CR-115 |
| | § | |
| RODOLFO "RUDY" DELGADO | § | |

**AMENDED MOTION FOR CHANGE OF VENUE**
**FOR TRIAL PURPOSES ONLY**

TO THE HONORABLE JUDGE OF SAID COURT:

Now COMES RODOLFO "RUDY" DELGADO, Defendant, by and through his undersigned counsel, and files this Amended Motion for Change of Venue for Trial Purposes Only to the McAllen Division of the Southern District of Texas, and states the following in support there of:

**I. Relief Sought.**

Defendant seeks transfer of trial to the McAllen Division. As expressed in court, this is not an effort to seek a designation of a different judge, nor an effort to seek transfer of the entire case, including any necessary pretrial hearings, to the McAllen Division. Rather, it is limited to a request for trial in the McAllen Division. A motion to transfer venue was filed initially upon Defendant's arrest as a result of the Government's filing of a Criminal Complaint. Now, after review of the extensive discovery in the instant case and review of the three indictments returned against Defendant, the need for transfer has become significantly more apparent. For the reasons described below (location and availability of witnesses; location of defendant's residence and support system necessary for trial; public policy underlying the need for trial at the actual situs of the alleged crime), Defendant will suffer significant harm if trial is conducted in Houston.

## II. The Supreme Court & Public Policy Concerns.

The Supreme Court has explained that "[q]uestions of venue in criminal cases . . . are not merely matters of formal legal procedure. They raise deep issues of public policy in the light of which legislation must be construed." *United States v. Johnson,* 323 U.S. 273, 276 (1944). To be prevented is "open[ing] the door to needless hardship to an accused by prosecution remote from home and from appropriate facilities for defense." *Id.* at 275. The issue of venue touches directly on the fairness of our criminal justice system:

> It *[i.e., the "leeway" of prosecution being in one place rather than another]* also leads to the appearance of abuses, if not to abuses, in the selection of what may be deemed a tribunal favorable to the prosecution.
>
> These are matters that touch closely the fair administration of criminal justice and public confidence in it, on which it ultimately rests. These are important factors in any consideration of the effective enforcement of the criminal law. They have been adverted to, from time to time, by eminent judges; and Congress has not been unmindful of them.

*Id.*

For public policy reasons, while it might facilitate the Government's reasons for wanting trial in a certain division or district, such reasons "must be balanced" against "the serious hardship of defending prosecutions in places remote from home (including the accused's difficulties, financial and otherwise . . . of marshalling his witnesses), as well as the temptation to abuses . . . in the administration of criminal justice." *Id.* at 278.

A trial in Houston versus McAllen raises several public policy issues that should be considered:

First, what message is being sent to the jury who will decide Defendant's fate, as well as the message to be sent to the larger community in Houston? Because all events transpired in McAllen, the Houston jury will inevitably wonder why they are presiding over this trial. Would not the implication be conveyed to the jury as well as to the Houston community that people in

McAllen must be corrupt, or accepting of corruption, and therefore cannot be trusted to preside over this kind of trial?

Second, what message is being sent to the community of McAllen?  That a jury cannot be trusted to fairly and objectively review the evidence and sit in judgment of a case that directly affects their community? That the Government trusts that the McAllen community can preside over all other types of trials - - drugs, firearms, alien smuggling and child pornography - - but not cases of alleged public corruption?

A trial in Houston would subtlety put a finger on the scale of justice and comment on Defendant's guilt, where even a well-intentioned jury instruction would negatively highlight the issue. A trial in Houston would not only impede Defendant's constitutional right to a fair trial by a jury of his peers, it would send a wrong message to the communities of Houston and McAllen that the Government perceives the McAllen community as untrustworthy. These are public policy issues that courts and Congress have sought to eliminate.

That ostensibly has been the reason why in the Southern District of Texas, other districts in Texas and elsewhere, there exists a history of public corruption cases being tried in the local community affected by the alleged corruptive acts. This is based on the public policy that a community is vested in addressing all concerns of public corruption by its own public officials. Attached as Exhibit A is a list of cases of public officials prosecuted in the same community in which they were called to serve; that is, the same federal judicial *division* in which the public official served. Some of these defendants went to trial, while others pled guilty. But even in the cases in which defendants pled guilty, the salient point is that the case was prosecuted in the same division as where the alleged crime took place, not knowing whether such defendants were ultimately going to want a trial or not. In the instant case, Defendant is presently saddled by the

unilateral decision of the Department of Justice to face a trial in Houston, even though there is an extensive history for conducting trials, or potential trials, in the same division as the alleged crimes. There is no valid reason to make an exception in the instant case.

Another factor to consider relative to public policy concerns is that trial in Houston would impede press coverage in the community impacted by the alleged corruptive activities. Clearly, the media in McAllen and surrounding areas have a vested First Amendment interest in the reporting of the instant case. Conducting a trial in Houston, where no significant reason calls for it to be so, results in the unnecessary loss of time and expense by media personnel who then would have to travel to Houston to fulfill their responsibility to the residents of the greater McAllen area. This also is a valid public policy concern, as courts and parties carry a measure of responsibility to ensure that the media is not adversely impeded from its obligation to report news, particularly where there is no compelling reason to do otherwise.

In addition to public policy concerns, application of the factors cited in the Constitution, applicable rule of procedure, and case precedent (all described below) weighs heavily in favor of transfer. For reasons cited above and below, Defendant respectfully urges this Court to transfer trial of the instant case to the McAllen Division.

### III. The Charging Documents.

In order to properly analyze the legal and factual issues, an examination must be made of the charging instruments that have been filed in the instant case.

On February 2, 2018, the Government, by and through the U.S. Attorney Office ("USAO") and Trial Division of the Department of Justice ("DOJ"), filed a Criminal Complaint in the Houston Division of the Southern District of Texas ("SDTX"). An arrest warrant was issued by the U.S. Magistrate Court, commanding the arrest of Defendant, a resident of Hidalgo County, Texas, a

county wholly situated within the McAllen Division of the SDTX. The Complaint alleged the commission of the offense of Bribery committed by Defendant, a Texas state elected district court judge of a court presiding in Hidalgo County, Texas. All of the acts listed in the Complaint which form the basis of the charge describe conduct wholly committed within the McAllen Division, specifically, Hidalgo County, Texas. No act listed in the Complaint describes conduct committed within the Houston Division. No reason is apparent from the face of the Complaint as to why the Government chose to file the Complaint in the Houston Division rather than the McAllen Division.

Information was apparently presented by the Government to a grand jury sitting in the Houston Division, resulting in the return of an indictment in the Houston Division. The case was assigned to the instant court as per procedures for cases filed in the Houston Division.

Since that point, the Government sought and obtained the return of two superseding indictments in the Houston Division: June 19, 2018, and July 25, 2018, respectively. Trial in the instant case is anticipated to last two calendar weeks, commencing February 25, 2018.

The three indictments collectively describe acts which allegedly form the basis for three distinct charges of Bribery, three distinct charges of Travel Act violations, and a charge of Obstruction of Justice. The three alleged charges of Bribery (the alleged receipt of cash by Defendant in Hidalgo County, Texas, in exchange for an official act taken by Defendant in his capacity as a Texas state elected judge sitting in a Hidalgo County court) and the alleged charge of Obstruction of Justice (the alleged transmission of a communication from Defendant to an attorney) all describe conduct which wholly occurred within the McAllen Division, specifically Hidalgo County, Texas. The three alleged Travel Act violations all are based on an alleged transmittal of communication via "a telephone and a wire" for the alleged purpose to promote the

commission of the same three Bribery charges (i.e., the payment of cash in exchange for an official act), with the added jurisdictional fact of the State of Texas' receipt of federal funds.

Nothing on the face of the three indictments reference acts committed in the Houston Division, nor is there any indication of the reason for the Government having decided to seek the return of these indictments in the Houston Division.

## IV. Facts Learned through Discovery.

As previously conveyed to the Court in a separate motion, the discovery provided by the Government is quite expansive. The investigation of the instant case was extensive, lasting almost fifteen months prior to the filing of the initial Complaint. Notably, no information is evident to undersigned counsel of acts committed in the Houston Division. Alternatively, all acts which appear to form the basis of the instant prosecution occurred in the McAllen Division, and more specifically, in the cities of McAllen and Edinburg (a city contiguous to McAllen).

The following are examples of information gleaned from review of the discovery:

### A. Persons Interviewed by Government Agents.

There appear to have been interviews of several dozen persons by Government agents. More than half of these persons reside and/or work within the McAllen/Edinburg area.

Only one person interviewed appears to live in Houston: a financial officer working for a civil law firm that also employed Defendant Delgado's son, Ryan Delgado, an attorney who worked for the law firm. The interview related to whether the attorney knew Ryan Delgado was representing a person in a misdemeanor case. Neither this witness nor the misdemeanor case is relevant to the instant case.

All civilian persons interviewed who appear to be relevant to the instant case and who comprise probable witnesses reside and/or work in the McAllen area.

### *B. Search Warrants*

Numerous search warrants were executed, all of which are in the McAllen/Edinburg area. This includes Defendant Delgado's residence and courtroom chambers. To the extent any document or other items was seized from such search warrants and are to be used at trial, all of such documents and items relate to activities and events occurring the McAllen/Edinburg area.

### *C. Surveilled Persons and Locations.*

Thus far, at least ten persons were surveilled by Government agents.  All of these persons were surveilled in the McAllen/Edinburg area.

Distinct from surveillance activities which appear to be of particular persons, it appears that Government agents generally surveilled at least four locations, watching all persons coming and going from the location (Delgado's residence and various businesses). In addition to surveillance by agents, the Government conducted electronic surveillance via pole cameras in at least five different locations in the McAllen area.

All of the locations of surveillance are situated in the McAllen/Edinburg/Pharr area.

### *D. Defendants in State-Court Prosecutions*

The indictment in the instant case references numerous defendants in state-court criminal cases. From a review of their records produced in discovery, it appears all reside in McAllen, cities which are contiguous to McAllen (Edinburg and Alamo) or cities south of McAllen (Donna, Mission, and Brownsville, all cities even further away from Houston).

Undersigned counsel's experience informs that it is not radically unusual to present information to a grand jury sitting in a judicial division distinct from the division where acts of public corruption are suspected to be occurring. This is particularly true where the conduct is suspected to be occurring within the federal "structure" (e.g., a federal court's physical locale; a

7

federal agency which operates to some extent within the same situs of a grand jury and/or court; etc.). Even so, reasons which may justify the situs of a grand jury's consideration in one particular judicial division are distinct from factors which guide a court's determination of the situs of trial.

## V. Applicable Law.

Generally, venue issues focus on which judicial *district* a case is prosecuted. Situations arise, however, with challenges made relative to which judicial *division* within a district a case is prosecuted. The dynamic and impact of this issue comes to a unique defining point where a prosecution is had in a judicial district that is as large as the Southern District of Texas. If the instant prosecution was in a district with one or even two divisions, perhaps the situs of trial would not be so stark a concern. But, not so in the Southern District of Texas.

The Southern District has seven distinct Divisions, encompassing a total of forty-three Texas counties. In terms of geographical size (which is a critical issue when considering the convenience of a defendant, victim, and witnesses), the Southern District is one of the fourth largest in the United States. It is comprised of over 44,000 square miles. A one-way drive from McAllen to Houston lasts approximately six hours, assuming no significant traffic holdups (an issue of particular concern in the Houston area). Accordingly, consideration of pertinent factors described below should be in the context of the enormity of this unique district. As further described below, these factors include the residence, convenience, and expense to a defendant; the availability of witnesses, considering their residence and workplaces; the availability of a defendant's support system, including family and friends; and the actual situs of the particular crime(s) charged.

Numerous constitutional provisions, rules and case law address each of these issues relative to the prosecution, trial and other forms of consideration of criminal cases.

### *A. United States Constitution.*

"The Constitution twice safeguards the defendant's venue right: Article III, § 2, cl. 3 instructs that 'Trials of all Crimes . . . shall be held in the State where the said Crimes shall have been committed'; the Sixth Amendment calls for trial 'by an impartial jury of the State and district wherein the crime shall have been committed.'" *United States v. Cabrales,* 524 U.S. 1, 6 (1998). As noted by the Supreme Court, "[p]roper venue in criminal proceedings was a matter of concern to the Nation's founders." *Id.* Indeed, the Government conceded to the Supreme Court that "the venue requirement is principally a protection for the defendant." *Id.* at 9.

In *Cabrales,* the Supreme Court "adhere[d] to the general guide . . . [that] 'The *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" *Id.* at 6-7, quoting *United States v. Anderson,* 328 U.S. 699, 703 (1946). The Court found the Government's argument relative to the Government's "convenience, and the interests of the community" to be unpersuasive. *United States v. Cabrales*, 524 U.S. at 9-10.

### *B. Applicable Rule of Procedure.*

Rule 18 of the Federal Rules of Criminal Procedure provides:

> Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The Court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice. [sic]

Fed.R.Crim.P. 18.

Interestingly, Rule 18 distinguishes the "prosecution" of a case and the "trial" of a case. Clearly, the Government's legal authority to unilaterally choose to *prosecute* the case in the Houston Division is undisputed. The Government's unilateral authority to choose locations, however, ceases when it becomes an issue of which *division* should be the situs of *trial*:

> "**_The Court_** must set **_the place of trial_** within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice."

Fed.R.Crim.P. 18 (emphasis added).

That is, Rule 18 distinguishes place of prosecution from place of trial by distinguishing whose authority governs the situs of prosecution versus trial. Moreover, though Rule 18 advises "due regard" for the un-delineated "prompt administration of justice," it offers more specific delineations for other factors, specifically "the convenience of the defendant, any victim, and the witnesses." Notably, delineation of the convenience and/or desire of the prosecution is absent within the Rule.

### C. Applicable Case Law.

The Fifth Circuit Court of Appeals has addressed the issue of a Defendant's requested transfer of divisions. *See, e.g., United States v. Garza*, 593 F.3d 385 (5th Cir. 2010) & *United States v. Lipscomb,* 299 F.3d 303 (5th Cir. 2002). Each of these cases address factors a district court is to consider in determining whether justice warrants a transfer of division for purposes of trial.

#### 1. United States v. Garza.

In *Garza*, Defendants appealed their convictions on the basis that the district court of the Del Rio Division of the Western District of Texas ("WDTX") erred by transferring the case from the Del Rio Division to the Waco Division, also within the WDTX. *United States v. Garza,* 593 F.3d at 386-387.[1] Relying on Rule 18 of the Federal Rules of Criminal Procedure, the Fifth Circuit

---

[1] The underlying facts of the *Garza* case are not dispositive of the issue in the instant case but are provided here for context:  Defendants requested a transfer from the Del Rio Division to the San Antonio Division, on the basis of several motions to disqualify the judge in the Del Rio Division. *Id.* at 387. Denying Defendants' motion to transfer the case to the San Antonio Division, the court *sua sponte* transferred the case to the Chief Judge sitting in the Waco Division. *Id.* The Chief Judge sitting in Waco was situated over three hundred miles from the Del Rio Division. *Id.* The Chief Judge accepted the transfer and ordered that trial would occur in

found that the district court abused its discretion in transferring trial of the case to the Waco Division. *Id.* at 389-391. The Fifth Circuit Court found it appropriate to weigh the "convenience of the defendants" against the "prompt administration of justice." *Id.* at 390. In this regard, the Court examined (1) the distance from the defendant's home; (2) the location of the defendant's witnesses; and (3) the ability of the defendant's family and friends to attend the trial. *Id*. at 390, citing *United States v. Lipscomb,* 299 F.3d 303, 340 (5th Cir. 2002); *DuPoint v. United States*, 388 F.2d 39, 44 (5th Cir. 1967); & *United States v. Stanko*, 528 F.3d 581, 586 (8th Cir. 2008). With regard to the "convenience of the defendants," the appellate court found that trial in the Waco Division would have "required every interested party to travel more than three hundred miles to participate in the trial." *United States v. Garza*, 593 F.3d at 390. In contrast, the appellate court observed that "Rule 18's 'second textual factor - - 'due regard to . . . the prompt administration of justice'- - is in part a literal command that trials comply with the Speedy Trial Act.'" *Id.,* citing *United States v. Lipscomb*, 299 F.3d at 341 (internal citation omitted). Ultimately, the Fifth Circuit found that a trial in the Waco Division was improper and an abuse of discretion by the district court. *United States v. Garza*, 593 F.3d at 391.[2]

### *2. United States v. Lipscomb.*

In *Lipscomb*, the Fifth Circuit also considered a district court's transfer from the Dallas Division to the Amarillo Division. *United States v. Lipscomb*, 299 F.3d at 337. Interestingly, the case involved charges of public corruption against "one of the best-known sitting elected officials

---

Waco. In response, Defendants filed a motion to re-transfer the case either back to Del Rio or to San Antonio. *Id.* Defendants expressed concern for trial in Waco on the basis of cost and witness availability. *Id.* at 387-88. The Chief Judge denied their request and proceeded to trial in Waco.

[2] The Court noted that its "holding" was limited to unique factors involving the *sua sponte* transfer over and above the defendants' objections. *Id.* at 391. Yet, the form and nature of the Fifth Circuit Court's application of Rule 18's "textual" factors is instructive.

in the Dallas/Fort Worth metroplex." *Id.* The district court expressed concern over the significant pretrial publicity that had occurred in the Dallas Division. *Id.* The Fifth Circuit reversed the district court, finding that despite the existence of extensive pretrial publicity in the Dallas Division, the appellate court could "detect virtually nothing on the Rule 18 scale to counterbalance the defendant's inconvenience" by having trial in the Amarillo Division.

### 3. United States v. Montemayor.

The *Lipscomb* and *Garza* cases have provided guidance from the Fifth Circuit as to the relative weight to be given different factors. It was in this context that this same issue was considered by a district court sitting in the Houston Division of the Southern District of Texas. *See United States v. Montemayor,* No. H-13-0039, 2013 U.S. Dist. LEXIS 116499 (S.D. Tex. Aug. 16, 2013). In *Montemayor,* two defendants were charged in the Houston Division for committing various tax code crimes related to their businesses located in Laredo, Texas. *Id.* at **2-3. Mr. Montemayor filed a motion requesting his case be transferred to the Laredo Division because "a trial so far from the homes of the defendant and necessary witnesses will deny the defendant his constitutional right to a fair trial." *Id.* at *3. The Court cited two constitutional provisions in noting that a defendant does not have a constitutional right to be tried in a particular division within a district:

> Article III § 2 cl. 3 of the United States Constitution provides that "[t]he Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed."

*Id.* at *4.

Yet, the Court distinguished this axiom in recognizing that "the Fifth Circuit has 'interpreted the Sixth Amendment to mean that "it is the public policy of this Country that one must not arbitrarily

12

be sent, without his consent, into a strange locality to defend himself against the powerful prosecutorial resources of the Government."'" *Id.* at **4-5, citing *United States v. Lipscomb, supra; Dupoint States v. United States, supra; & Platt v. Minnesota Mining & Manufacturing Co.,* 376 U.S. 240 (1964) ("The Constitution makes it clear that determination of proper venue in a criminal case requires determination of where the crime was committed. . . . The provision for trial in the vicinity of the crime is a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place.").  Citing *Garza, Lipscomb,* and other cases, the Court referenced the factors cited in Rule 18 of the Federal Rules of Criminal Procedure, stating "[c]onvenience is determined by: (1) the distance from the defendant's home; (2) the location of the defendant's witnesses; and (3) the ability of the defendant's family and friends to attend the trial." *Id.* at **5-6. Relying on *Garza* and *Lipscomb*, the Court interpreted the "prompt administration of justice" factor as one of timeliness of trial. *Id*. at *6.

Most of the *Montemayor* facts mirror the facts in the instant case:  the defendant resided in Laredo; virtually all of the witnesses are from Laredo or cities within a relatively short driving distance from Laredo; all events pertinent to the case occurred in Laredo, and none of the acts at issue occurred in Houston; all relevant documents and records are situated in Laredo; Montemayor is employed in Laredo; trial in Houston will increase the expense of trial incurred by both the defendant and the Government alike because most of the Government agents reside and work in Laredo; Houston is a minimum six hours' driving distance from Laredo. *Id.* at *7.

Ultimately, the Court made the following findings which are important to analysis of the instant case:

> In light of the Government's failure to show that this case has any ties to Houston and the Government's failure to dispute the facts on which Montemayor bases his argument that all of the relevant factors weigh in favor of holding trial in Laredo, the court concludes that the convenience factors all support granting Montemayor's

motion. As to the prompt administration of justice, Montemayor has agreed to waive his speedy trial rights; and because the court has made only a few rulings in this case, the court is not particularly familiar with the case. Moreover, the Government has not offered any evidence from which the court could conclude that maintaining the case in Houston would serve the need for the prompt administration of justice, or outweigh the Rule 18 convenience factors that all favor granting Montemayor's motion to transfer.

*Id.* at 10.

It is also important to note how the District Court interpreted and applied the constitutional mandates of holding trial where "the crime was committed" and Rule 18's mandate of "prosecuting" the case in the *district* of where the offense was committed. Rather than interpreting such mandates within the broad scope of whether the crime allegedly occurred in the same *district*, the Court interpreted these mandates in the context of the *actual situs of the crime within a district*:

Because as explained in *Garza*, 593 F.3d at 385, Rule 18 presumes that a case should be tried where the offenses at issue were committed, because the offenses at issue are all alleged to have occurred in Laredo, because the defendants and the witnesses all live in Laredo or close thereto, and because the case has no apparent ties to Houston that would serve the need for the prompt administration of justice, Montemayor's motion to transfer to Laredo will be granted.

*Id.* at **10-11.

### 4. United States v. Orona-Ibarra.

The Seventh Circuit Court of Appeals recently recognized the important value of a defendant's "support system" he would lose if not allowed to face trial in the area of his residence. *United States v Orona-Ibarra,* 831 F.3d 867, 872-73 (7th Cir. 2016).

While the Supreme Court has not set forth a comprehensive discussion of the values protected by the constitutional venue provisions, it has identified some. These include the protection of a defendant from prosecution in a place far from his home and the support system that is necessary to mount an adequate defense. . . .

Given the nature of the right, there is no mechanical test to determine constitutional venue. Rather, the test is best described as a substantial contacts rule that takes into account the site of the defendant's acts, the elements and nature of the crime, the locus and effect of the criminal conduct, and the suitability of the district for fact-finding. These are real

limitations: the Court has cautioned that venue provisions in Acts of Congress should not be so freely construed as to give the Government the choice of tribunal favorable to it."

*Id.* at 872, citations and quotes omitted.

## VI. Application of Law to Instant Case.

Similar to each case referenced above, a list compiled of pertinent factors in the instant case overwhelmingly favor trial in the McAllen Division. By way of background, the alleged offenses involve (a) the purported payment of cash on multiple occasions by an attorney to a judge in exchange for the judge's official acts in connection with persons on "community supervision" in then-pending criminal cases (that is, persons supervised by probation officers in connection with their sentences); (b) the purported purchase of items at an inflated price; (c) the judge's purported obstruction of justice by sending a communication to an attorney relative to the cash that the attorney had given to the judge; (d) the state-court criminal cases that are the subject of the indictment all involve different state prosecutors and/or probation officers; (e) during the time of meetings between the attorney and Mr. Delgado, Mr. Delgado was an active candidate in a contested political race for an appellate judgeship in the McAllen, Texas area; and (f) Mr. Delgado also assisted in operating a foundation in the name and honor of his deceased son; the foundation gave annual scholarships to students, drawn from an annual fundraising auction.

In that context, the following facts are notable relative to the legal factors described above:

### A. Facts Relative to Defendant and Defendant's Expected Witnesses.

In this regard, the following facts demonstrate the extensive ties of facts concerning the instant case to the McAllen Division:

(a) Mr. Delgado and his wife reside in McAllen, Texas;

(b) The indictment charges alleged meetings between an attorney and Mr. Delgado relative to cash payments and official judicial acts. These acts all occurred in McAllen, Texas;

(c) The indictment charges that purported payments were made of items at inflated prices, including the alleged taking of a truck. These acts all occurred in McAllen, Texas;

(d) Mr. Delgado's official acts as a judge that are the subject of the indictment all occurred in McAllen, Texas, in connection with cases then-pending in a state courtroom situated in McAllen, Texas;

(e) The attorney who was, and is, cooperating with law enforcement officials in connection with the above-described meetings with Mr. Delgado resides and works in McAllen, Texas;

(f) Numerous witnesses relative to the disposition of the state-court criminal cases that are the subject of the indictment (such as numerous courtroom personnel, district clerk personnel, numerous state prosecutors, bailiffs and criminal defense attorneys) all reside and/or work in McAllen or contiguous cities. Undersigned counsel and Defendant anticipate that a minimum of fifteen substantive witnesses will be called by the defense at trial. All of these witnesses live and work in the McAllen area. As this Court is aware, every trial, and in particular every trial that lasts two weeks or longer, carries a relatively unpredictable flow and pace from day to day. This affects an attorney's decisions as to the order of witnesses, the length of witness examination, whether a witness' testimony can be completed in one day or more, etc. Conducting a trial in Houston will necessarily impact to a significant degree the availability of witnesses for the Defendant. Contemplating a six-hour or more drive one way from McAllen to Houston, with the possibility that a certain witness or witnesses will not go on the stand at the time or on the day anticipated, will cause great inconvenience to the witnesses from McAllen. Whereas if trial were to occur in McAllen, such witnesses could remain "on call", minutes away from the courthouse, and could

thereby continue with their obligations and responsibilities to their employers, businesses and families. A trial in Houston would not lend itself to placing a witness "on call" and allowing the witness to resume with his/her life in the interim. This necessarily affects the willingness and/or ability of witnesses to appear in Houston to testify on behalf of the Defendant.

(g) The current home address of the numerous defendants in the state-court criminal cases, all of which were represented by the attorney cooperating with the Government, is not known, but records of their cases indicate such residences all are in the McAllen or Brownsville Division (the division further south than McAllen, and further away from Houston);

(h) A critical issue in the instant case is the *scienter* of the defendant in the context of cultural and professional norms in the McAllen area. Therefore, the appreciation and/or understanding of such cultural and professional issues will become pertinent to evaluating the nature of different types of relationships and the reactions by different individuals to certain acts. The appreciation and understanding of these local cultural and professional issues will necessarily be different in McAllen than Houston. This is not intended as a slight to either city. Rather, it is an unmistakable observation of the differentiation that must be made of the two distant cities in terms of cultural and ethnic makeup and perspectives.

(i) Extensive documents that will be pertinent to the defense of Mr. Delgado (including documents relative to state-court criminal cases in McAllen, Texas, Mr. Delgado's campaign, and the foundation referred to above) can only be introduced and explained by court and civilian personnel who reside and work in the McAllen Division;

(j) Agency reports verify that the extensive investigation at issue involved electronic and personal surveillance conducted by federal agents based in the McAllen Division, and that the

investigation was initiated in the McAllen Division by the local FBI office. It is likely that agents from such office will be witnesses in trial;

(k) Many witnesses relative to Mr. Delgado's fundraising efforts in connection with his political campaign reside and work in McAllen, Texas;

(l) Many witnesses relative to Mr. Delgado's fundraising efforts in connection with the charitable foundation reside and work in McAllen, Texas;

(m) The private investigator retained by undersigned counsel to assist in the investigation of the instant case (including multiple interviews of pertinent witnesses residing in McAllen, subpoena and review of documents in McAllen, and organization of extensive documents) and assistance during the entire trial of the instant case, resides and operates his private investigation office in McAllen, Texas;

(n) The distance between McAllen, Texas, and Houston, Texas is over 350 miles, and takes approximately six hours to drive from one location to the other, assuming no significant delay caused by traffic;

(o) None of the acts at issue occurred in Houston, Texas;

(p) Undersigned counsel, a solo practitioner, works in San Antonio, Texas, which is relatively equidistant from Houston and McAllen. A critical difference, however, is that there are several attorneys in McAllen with whom undersigned counsel has worked extensively and who are prepared to provide assistance to undersigned counsel during pretrial preparations and trial. This same base of support would not be present in Houston, Texas, and therefore, in terms of the "support system" that is referred to in caselaw, Defendant would be deprived of an important support system by having trial in Houston.

Attached to this motion as Exhibit B is the signed declaration of Defendant Rodolfo Delgado, which provides additional information to the Court relative to the issue of inconvenience to the defendant, his anticipated witnesses, and family and friends. Notably, it references the dozens of persons who could and would provide a system of support to Defendant if the trial were to be held in McAllen rather than Houston. As noted in the legal discussion above, courts have included this as an important factor to consider on public policy and legal grounds.

### B. Facts Relative to the Government.

Evident from the case law, rules and constitutional provisions discussed above is the fact that inconvenience to the Government is not a factor to consider in making this determination. Nevertheless, the following is offered.

In relative terms, a trial in McAllen rather than Houston would not cause significant inconvenience to the Government. Whereas one assigned prosecutor offices in Houston, the other resides and works in the Washington D.C. area. Such prosecutors are provided full "per diem" for travel to McAllen. The U.S. Attorney Office situated in the same building that houses all federal courtrooms in McAllen is fully staffed and ready to assist the prosecutors and agents.

Though the FBI office in Houston currently stores dozens of boxes that were reviewed by undersigned counsel, the prosecutors made it clear to undersigned counsel that none of such boxes stored any exhibit that the Government intended to offer. All expected Government exhibits were provided in digital form to undersigned counsel, and thus there would be little to no inconvenience for the Government to present such exhibits at trial in McAllen.

The primary Government witnesses, if not most or all of the Government's witnesses, live and/or work in the greater McAllen area.

### C. Summary of Pertinent Facts.

Trial in Houston will cause significant inconvenience to Defendant in terms of expense and the detriment of being away from his residence, and it would deprive him of available witnesses, a valuable support system for him and his attorney, and the availability of family and friends to provide support during trial. Through the Government's unilateral choice of venue in filing the case in Houston, Defendant will be effectively deprived of a jury of his peers, who would understand the cultural, ethnic and locally-unique nuances which the Constitution and Courts have recognized as crucial to an accused. All of the factors listed in Rule 18 weigh heavily in favor of transfer to McAllen for trial purposes. For all the reasons set forth above, including public policy reasons which focus on the actual situs of the crimes charged, Defendant respectfully urges this Court to transfer the instant case to McAllen for trial purposes only.

## VII. Hearing

Defendant is prepared to present evidence of the items listed above should the Court require. Undersigned counsel anticipates, however, that such items will not be in dispute.

Wherefore, premises considered, Defendant requests that the Court transfer the situs of trial in the instant case to the McAllen Division, and for such other and further relief as the Court deems appropriate.

Respectfully submitted,

 /s/ Michael McCrum
Michael McCrum
MCCRUM LAW OFFICE
404 E. Ramsey Road, Suite 102
San Antonio, TX 78216
(210) 225-2285
(210) 225-7045 (fax)
michael@mccrumlegal.com

## **CERTIFICATE OF CONFERENCE**

As AUSA Searle expressed in Court, the Government opposes transfer of trial to the McAllen Division.

*/s/ Michael McCrum*
Michael McCrum

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing Amended Motion to Change Venue has been filed electronically on this ___ day of August 2018 and a copy sent to the United States Attorney's Office, and all other counsel through the Court's electronic filing system.

*/s/ Michael McCrum*
Michael McCrum

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATED OF AMERICA | § | |
| | § | |
| v. | § | CASE NUMBER 18-CR-115 |
| | § | |
| RODOLFO "RUDY" DELGADO | § | |

## ORDER

On this date came on to be considered the Defendant's Amended Motion for Change of Venue for Trial Purposes Only. The Court finds the motion is well-founded and should be granted.

IT IS HEREBY ORDERED that Defendant Rodolfo "Rudy" Delgado's Amended Motion for Change of Venue for Trial Purposes Only is granted, and trial of the instant case shall occur in the McAllen Division. All proceedings other than trial shall continue to occur in the Houston Division. By separate order, the Court will enter findings of fact and conclusions of law.

SIGNED AND ENTERED, on this the _____ day of _____, 2018.

_____
UNITED STATES DISTRICT JUDGE