UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATED OF AMERICA | § | |
| | § | |
| v. | § | CASE NUMBER 18-CR-115 |
| | § | |
| RODOLFO "RUDY" DELGADO | § | |

**REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION FOR CHANGE OF VENUE
FOR TRIAL PURPOSES ONLY**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES RODOLFO "RUDY" DELGADO, Defendant, by and through his undersigned counsel, and files this Reply to the Government's Response to Defendant's Amended Motion for Change of Venue for Trial Purposes Only to the McAllen Division of the Southern District of Texas:

**I. Government's Response.**

The Government's response is not only notable for what it asserts, but what it fails to address. It's assertions do not fully convey pertinent facts, and it's failure to address important factors is telling.

The Government asserts that (a) Defendant is a public figure in McAllen and thus it would be "challenging, if not impossible" for this Court to empanel an objective jury; (b) Defendant's voluntary travel to San Antonio and Austin visit his sons and lawyers proves it would not be inconvenient or prohibitively expensive to travel to Houston for trial; and (c) Defendant's assertion of anticipated witnesses calls for a hearing for Defendant to make an offer of proof as to what admissible evidence such witnesses will provide.

Significantly, the Government failed to offer any response to the following factors: (i) the public policy concerns expressed in Defendant's Amended Motion; (ii) Government's witnesses (lay and official) residing in the McAllen Division; (iii) the ability of the Defendant's family and friends to attend to trial; (iv) the relatively small quantity of physical exhibits that the Government will be introducing at trial; (v) the entirety of the locus and effect of the alleged criminal conduct existing in the McAllen Division; and (vi) available support for Defendant's attorney.

The fallacy of the Government's response lies in both the erroneous conclusions of its assertions and the failure to address other factors raised in Defendant's amended motion. Each of these will be addressed in turn.

## **II. Fallacy of Government's Assertions.**

### *A. Defendant's Public Status.*

The Government asserts Defendant's status as a public figure will make it "challenging, if not impossible" to empanel an objective jury. The Government fails to address, however, how such an impediment did not affect the propriety of the Government's decision in filing other cases involving public figures in the situs of their public status. As noted in Exhibit A of Defendant's motion, cases filed in the McAllen, Brownsville, Laredo and other Divisions involved public figures who held high-profile offices in the same division as their prosecutions: several sitting Sheriffs; an elected Texas State District Judge; an elected Texas State Representative; an elected District Attorney; two different elected County Commissioners; an elected State Senator; an elected Mayor; an elected County Tax Assessor-Collector; and several elected School Board members. Surely, the Government in those cases took into account before filing each case the public figure status of each prospective defendant, not knowing whether such defendants would plead guilty or assert their constitutional rights to a jury trial.

2

Also, the Government asserts that Defendant Delgado is an active candidate for judicial office. Defendant has been advised that the only way another candidate can be listed on the Democratic ballot is if Defendant Delgado was convicted in the instant case or surrendered his law license. Defendant has surrendered his position as a state district judge. He no longer makes public appearances as a candidate. He no longer is actively disseminating campaign materials. The law does not require that he surrender his law license during the pendency of a case, so he has not done so. But regardless, he is not practicing law. Defendant is no longer campaigning for office.

### B. Defendant's Travel to Visit His Sons and Lawyers & Attend Court.

The Government asserts that Defendant's "significant voluntary" and "frequent" pretrial travel to visit his two sons and two lawyers indicates that a trial in Houston would not pose a significant inconvenience for the defendant. *See* Govt. Response at 2 & 3. As reflected in a motion previously filed in the instant case (unopposed by the Government), Defendant's two remaining sons who are alive live in San Antonio and Austin, respectively. *See* Docket No. 39, p. 1. Undersigned counsel's office is in San Antonio, and Defendant's previous administrative attorney (i.e., an attorney he retained to address the judicial administrative issues attendant to his prosecution) offices in Austin. *See* Docket Nos. 22 & 31.[1] As noted above, Defendant has withdrawn from his position as a state district judge, so it is no longer necessary to consult with the Austin attorney. In any event, Defendant's travel to Austin did not force Defendant to incur any hotel and associated expense.

---

[1] The Government cites Document Nos. 39 and 49 in support of its contention that Defendant continues to confer with his administrative attorney in Austin. Defendant's motions filed as Document Nos. 39 & 49 do not so state, but instead reference a previously-filed motion. Defendant no longer travels to Austin to confer with his previously-retained administrative attorney. Defendant has not requested permission to meet with the Austin attorney since March 5, 2018.

Such is not the case in Houston, where no relative of Defendant resides. Moreover, the Government unopposed Defendant's request to waive his appearance at a scheduled arraignment held in Houston, based on the necessity of travel to Houston. *See* Docket Nos. 46, 47. Defendant had requested the Government's assent to avoid unnecessary expense. Upon the filing of the second superseding indictment, the Government opposed undersigned counsel's second request for Defendant's waiver of arraignment. It was upon the Government's opposition that Defendant appeared with counsel.

Regardless, the Government's assertion that it would not burden Defendant to travel to Houston for trial because he has travelled to San Antonio and Austin misses several key factors. First, Defendant and his spouse do not need to incur hotel and/or associated expenses (such as food) when visiting his sons in San Antonio and Austin, respectively. Second, the Government's point avoids the important fact that it was not necessary for all of Defendant's witnesses, friends and family to travel with him to San Antonio and Austin when he visited his sons and/or attorneys; but such <u>would</u> be necessary if trial was conducted in Houston. This results in a profound burden in terms of time, expense and otherwise. The Government posits that forcing Defendants' witnesses, family and friends would be minimally intrusive because of the availability of inexpensive flights to Houston from McAllen. Such an argument does not take into account the cost of securing a hotel room in downtown Houston, the traffic problems in Houston if a downtown hotel is unavailable or unaffordable, the extraordinary burden placed on persons to force them away from their homes and workplaces if trial is not held in McAllen, and the hindrance that could likely result in the Defendant's presentation of evidence, given the inability to call and/or change the order of his witnesses in a Houston trial.

Interestingly, the Government thrice cites the Fifth Circuit Court of Appeals to argue that a district court's refusal to transfer venue is reviewed for "abuse of discretion." *See* Govt. Response at 7 (citing *United States v. Roberson*), 8 (citing *United States v. Alvarez* in arguing there was insufficient evidence to reverse the district court's decision) & 9 (citing *United States v. Gourley*). In doing so, however, the Government fails to address the public policy grounds which compel a transfer in the instant case. The issue is not whether the district court should not worry about getting reversed, as the Government suggests in its repeated references to the limited standard of review on appeal, but whether constitutional standards which seek to achieve fairness are adhered to. In the instant case, a trial in Houston would reap a substantial burden on Defendant's ability to present an adequate defense and also be assisted by family and friends during the trial. His siblings and other family members are elderly citizens, which minimizes the Government's perceived benefit and reliance on "this age of convenient travel." His investigator lives and works in McAllen. His attorney has been invited to utilize the office and resources of a local attorney in McAllen. The effect of these factors cannot be duplicated in Houston.

### *C. Media Coverage.*

The Government's offers no evidence that an objective jury cannot be empaneled in McAllen. Its argument relative to media coverage is pure conjecture, and belies the fact that numerous other high-profile cases have been filed and handled in the McAllen Division and numerous other "border" divisions in Texas. Moreover, the Government's actions in previous high-profile cases undercuts its position in the instant case - - it chose numerous times to seek prosecution in the same division that a high-profile public figure was serving. Finally, if the Government's position is accepted, it essentially is asking this Court to set a precedent that Houston

is the only practical and viable situs for prosecution in any future high-profile prosecution, regardless of where it is filed in the Southern District of Texas.

The Government argues that the McAllen Division draws its jury pool from a population of approximately 925,115 people, citing "*Population Estimates of Texas Counties, 2010-2017, Texas State Library and Archives Commission, available at: https://www.tsl.texas.gov/ref/abouttx/popcnty2010-11.html.*" It compares that number with the 6.6 million people in the Houston Division.[2] This same website source, however, indicates that every other non-Houston division in the Southern District of Texas has less people than the McAllen Division:

> (i) The Corpus Christi Division has approximately 589,629 people.[3]
> (ii) The Victoria Division has approximately 183,707 people.[4]
> (iii) The Brownsville Division has approximately 445,309 people.[5]
> (iv) The Galveston Division has approximately 775,774 people.[6]
> (v) The Laredo Division has approximately 302,680 people.[7]

Under its newfound argument, the Government posits that none of the non-Houston divisions in the Southern District would qualify to host a trial of a high-profile public-servant defendant that garners local media attention. The argument is neither practical, logical nor supported by any evidence. The Government presents no evidence that the empanelment of an objective panel was

---

[2] *See* Govt. Response at 5.

[3] The Corpus Christi Division is made up of the following counties (with their respective 2017 populations in parentheses):  Aransas (25,572); Bee (32,563); Brooks (7,235); Duval (11,273); Jim Wells (40,871); Kenedy (417); Kleberg (31,088); Live Oak (12,174); Nueces (361,221); and San Patricio (67,215).

[4] The Victoria Division's counties:  Calhoun (21,744); DeWitt (20,226); Goliad (7,562); Jackson (14,805); Lavaca (20,062); Refugio (7,224); and Victoria (92,084).

[5] The Brownsville Division counties:  Cameron (423,725); and Willacy (21,584).

[6] The Galveston Division counties:  Brazoria (362,457); Chambers (41,441); Galveston (335,036); and Matagorda (36,840).

[7] The Laredo Division counties:  Jim Hogg (5,202); La Salle (7,584); McMullen (778); Webb (274,794); and Zapata (14,322).

unattainable in any high-profile case filed in the non-Houston divisions. Indeed, it cannot. Moreover, it offers no explanation why the Department of Justice deemed it appropriate to file all of the cases cited by Defendant in Exhibit A of his amended motion in the same division where each defendant held public office. The Government's argument is unsustainable.

### III. Government's Failure to Address Key Factors.

As noted above, the Government failed to offer any response to the following factors cited in Defendant's Amended Motion: (i) the public policy concerns expressed in Defendant's Amended Motion; (ii) Government's witnesses (lay and official) residing in the McAllen Division; (iii) the ability of the Defendant's family and friends to attend to trial; (iv) the relatively small quantity of physical exhibits that the Government will be introducing at trial; (v) the entirety of the locus and effect of the alleged criminal conduct existing in the McAllen Division; and (vi) available support for Defendant's attorney.

The Government proposes that this Court conduct a hearing to force Defendant to proffer what testimony each of its proposed witnesses would offer. As noted in Defendant's amended motion, Defendant plans to call many witnesses who reside and/or work in the McAllen Division. These witnesses include state courthouse personnel and numerous lay witnesses who have knowledge of aspects pertinent to the case at bar. The Government offers no legal authority for such a hearing, nor is undersigned counsel familiar with any. Undersigned counsel is aware of his ethical responsibilities to this Court. The general nature of the anticipated testimony is described in Defendant's Amended Motion, which was filed in good faith by undersigned counsel, supported by the sworn declaration of Defendant. Defendant would object to the Government's request for a hearing that would invite the Government into the work-product confidential trial preparation of Defendant and his counsel.

The Government also indicates that its evidence is in Houston, but later acknowledges that its evidence "is expected to be much more limited in scope, consisting of witness testimony, audio and video recordings, and limited documentary evidence." *See* Govt. Response at 11. Moreover, in its production of multiple disks of discovery since the time of indictment, the Government provided in the first disk what it considered was relevant to the instant case. As it states in its Response, the degree of evidence that would need to be transported to McAllen is minimal, contained in one CD disk.

There are no compelling reasons offered by the Government to justify trial in the Houston Division. The Government suggests that the investigation based out of Houston was justified for security reasons. While such an assertion should not be accepted whole cloth, it is the Government's choice to seek *prosecution* in Houston that was an act of forum shopping. There is no justification for choosing to prosecute this case in Houston. The Government's response basically argues only one point in support of its desire to conduct trial in Houston: that people in McAllen cannot be fair and objective. Such should never be the standard adopted by any government entity.

One of the trial attorneys listed on the Government's pleading, AUSA Robert Guerra, was a prosecutor working on the investigation prior to charges being filed in the instant case. AUSA Guerra is, and was at the time of the investigation, assigned to the McAllen Division. Everything else about this case is centered in the McAllen Division. The Government should not be permitted to shop forums with no justification at all, particularly where such shopping exacts such a heavy cost upon Defendant and the citizens of McAllen.

9

Wherefore, premises considered, Defendant requests that the Court transfer the situs of trial in the instant case to the McAllen Division.

Respectfully submitted,

/s/ Michael McCrum
Michael McCrum
MCCRUM LAW OFFICE
404 E. Ramsey Road, Suite 102
San Antonio, TX 78216
(210) 225-2285
(210) 225-7045 (fax)
michael@mccrumlegal.com

**CERTIFICATE OF CONFERENCE**

The Government has declared in its pleading that it opposes transfer of trial to the McAllen Division.

                                           */s/ Michael McCrum*
                                           Michael McCrum

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing Amended Motion to Change Venue has been filed electronically on this 5th day of September 2018 and a copy sent to the United States Attorney's Office, and all other counsel through the Court's electronic filing system.

                                           */s/ Michael McCrum*
                                           Michael McCrum

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATED OF AMERICA | § | |
| | § | |
| v. | § | CASE NUMBER 18-CR-115 |
| | § | |
| RODOLFO "RUDY" DELGADO | § | |

### ORDER

On this date came on to be considered the Defendant's Amended Motion for Change of Venue for Trial Purposes Only. The Court finds the motion is well-founded and should be granted.

IT IS HEREBY ORDERED that Defendant Rodolfo "Rudy" Delgado's Amended Motion for Change of Venue for Trial Purposes Only is granted, and trial of the instant case shall occur in the McAllen Division. All proceedings other than trial shall continue to occur in the Houston Division. By separate order, the Court will enter findings of fact and conclusions of law.

SIGNED AND ENTERED, on this the _____ day of _____, 2018.

_____
UNITED STATES DISTRICT JUDGE