IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

_____
                                        )
UNITED STATES OF AMERICA                )
                                        ) CRIMINAL ACTION NO.
VS.                                     ) 4:18-CR-115
                                        )
RODOLFO RUDY DELGADO                    ) 1:32 P.M.
_____)


MOTION HEARING
BEFORE THE HONORABLE ALFRED H. BENNETT
OCTOBER 19, 2018

APPEARANCES:

**FOR PLAINTIFF:**
MR. PETER M. NOTHSTEIN
U.S. Department of Justice
Public Integrity Section
1400 New York Avenue NW, 12th Floor
Washington, DC  20005

MR. ARTHUR R. JONES
United States Attorney's Office
1000 Louisiana, Suite 2300
Houston, Texas  77002

**FOR DEFENDANT:**
MR. MICHAEL W. McCRUM
McCrum Law Office
404 East Ramsey Road, Suite 102
San Antonio, Texas  78216

**ALSO PRESENT:**
MR. DAVID RONCSKA

**COURT REPORTER:**
Heather Alcaraz, CSR, FCRR, RMR
Official Court Reporter
515 Rusk, Suite 8004
Houston, Texas  77002
(713)250-5584

Proceedings recorded by mechanical stenography, transcript
produced by computer.

13:32:37  1        *(Call to Order of the Court.)*

13:32:38  2             **THE COURT:**  Good afternoon.  Please have a seat.

13:32:42  3             **MR. NOTHSTEIN:**  Afternoon, Your Honor.

13:32:44  4             **MR. McCRUM:**  Good afternoon, Judge.

13:33:21  5             **THE COURT:**  Cause No. 4:18-cr-115-1, United States of

          6    America versus Rudolph [sic] Rudy Delgado.

13:33:30  7        Counsel, please announce your appearances for the

          8    record.

13:33:33  9             **MR. NOTHSTEIN:**  Good afternoon, Your Honor.

          10   Peter Nothstein from the Department of Justice, Public Integrity

          11   Section.

13:33:39  12            **MR. JONES:**  Rob Jones for the United States Attorney's

          13   Office, Southern District of Texas, Your Honor.  Good afternoon.

13:33:43  14            **MR. NOTHSTEIN:**  And Special Agent David Roncska from

          15   the FBI is at counsel table as well, Your Honor.

13:33:47  16            **THE COURT:**  Very well.

13:33:48  17            **MR. McCRUM:**  Good afternoon, Your Honor.  Michael

          18   McCrum here for Mr. Delgado.  He's here.  We're ready to

          19   proceed.

13:33:55  20            **THE COURT:**  Defendant is present in the courtroom?

13:33:56  21            **MR. McCRUM:**  He is, sir.

13:33:57  22            **THE COURT:**  And he's represented by legal counsel?

13:33:59  23            **MR. McCRUM:**  Yes, sir.

13:34:00  24            **THE COURT:**  Very well.

13:34:00  25        The Court has before it the defendant's amended motion

1  for change of venue for trial purposes only, which is Document

2  No. 59 in the file.

13:34:11  3  In addition, the Court has before it the

4  United States' response to defendant's amended motion, which is

5  Document No. 61, as well as the -- as well as the defendant's

6  reply to the government's response to defendant's motion for

7  change of venue, which is Document No. 62.

13:34:31  8  Counselor, your motion.

13:34:36  9  **MR. McCRUM:**  Your Honor, should I -- can I argue here,

10  or would you like me at the lectern?

13:34:40  11  **THE COURT:**  Wherever you like.

13:34:45  12  And just to help the attorneys alone -- along in this

13  process, I've read the motion, I've read the response, and I've

14  read the reply.

13:34:56  15  **MR. McCRUM:**  Well, then, I don't want to waste the

16  Court's time, then, because that's my argument, Judge, fully set

17  out in the amended motion as well as my reply to the

18  government's response.  I provided an exhibit as well as an

19  affidavit, as you know, Judge.

13:35:13  20  The -- the overriding concept that we're here is that

21  it lean's in the Fifth Circuit's interpretation of the Sixth

22  Amendment that one should not be arbitrarily sent into a strange

23  locality -- and those are the words of the Fifth Circuit -- to

24  defend himself against the powerful resources of the

25  United States government --

**THE COURT:** What's -- was the Fifth Circuit referring to a division, or were they referring to a district when they spoke that way about a strange locale?

**MR. McCRUM:** It was a judge -- it -- that cited the *Lipscomb* case, which was a divisional case, and the judge here in the Southern District in the *Montemayor* case, which I cited in my motion, was also dealing with a divisional issue. And so both the district court as well as the -- the Fifth Circuit case that he was leaning on and citing from and quoting from was a divisional case.

**THE COURT:** The government, in its response to your motion, makes a point that I want to have you address here --

**MR. McCRUM:** Yes, sir.

**THE COURT:** -- and that is that you -- well, it's two points. I'll deal with the one I want to hear you on first, and that is: You state that the defendant, in its defense, may call witnesses that would be required to travel from McAllen to Houston, a six-hour drive or 75-minute plane flight depending on how you decide to get here.

Obviously, the defendant is under no obligation to put forth a defense. So in regard -- regards to that argument, that the defendant's witnesses would be burdened by having to travel to Houston, are you telling this Court definitively at this point, that you do intend to put forth a defense and that these witnesses that you reference would, in fact, be inconvenient --

1    inconvenienced by having to travel to Houston?

13:37:18  2          MR. McCRUM:  Sir, I am telling you without any

3    hesitation at all that I will be calling those witnesses at

4    trial.  Whether or not you ultimately grant a motion in limine

5    or an objection to relevance of any part of their testimony I

6    think is, ultimately, an issue we decide at trial.

13:37:36  7          But I, in good faith, believe that their testimony is

8    relevant.  It's material.  It's necessary, and I will be calling

9    those witnesses, Judge.  I know there was a reference in his

10    response --

13:37:47  11          THE COURT:  Well --

13:37:48  12          MR. McCRUM:  Yes, sir.

13:37:48  13          THE COURT:  -- before -- I don't want to cause you to

14    tip your hand --

13:37:51  15          MR. McCRUM:  Thank you, Your Honor.

13:37:51  16          THE COURT:  -- more than I've already caused you to

17    tip your hand.

13:37:54  18          MR. McCRUM:  Thank you, sir.  Yes.  That's an issue.

13:37:56  19          THE COURT:  In regards to the witnesses that you

20    intend to call that you feel comfortable disclosing that would

21    have to travel, are there any that you'd like to identify?  And

22    again, my decision does not turn on the identification of the

23    witnesses, but obviously, for the record, that would assist me

24    as to who we're talking about.

13:38:15  25          MR. McCRUM:  I've described the categories of

1    witnesses in my re- -- amended motion.  I have a list of names

2    that I'm perfectly comfortable giving to the Court.  I'd rather

3    give it to the Court *in camera*.  I don't want to tip my hand,

4    Judge, at this time.

13:38:31  5          THE COURT:  Okay.

13:38:32  6          MR. McCRUM:  But I have a list of -- of each category

7    right here in this iPad that I'm fully prepared to approach the

8    Court and -- and put it on the record as to the people -- real

9    people that I believe whose testimony are relevant and would be

10    inconvenienced, yes, sir.

13:38:46 11          THE COURT:  Very well.

13:38:47 12          The second point -- and then I apologize for

13    interrupting you --

13:38:51 14          MR. McCRUM:  That's all right, sir.

13:38:52 15          THE COURT:  -- was the issue regarding the

16    inconvenience to the defendant's family and friends.  I could

17    not find a case where any judge turned his or her decision on

18    the inconvenience to family and friends observing a trial.

13:39:08 19          MR. McCRUM:  The only case that I found was the one I

20    cited in my motion, Judge.  It was a Seventh Circuit case, and

21    it referenced the support of family and friends, and that being

22    rooted in the concept of a defendant having to be taken into a

23    strange locality to stand alone against the powerful resources

24    of the government.

13:39:28 25          In that Seventh Circuit case, the court directly

1   referred to the support system of -- of a citizen and how

2   important that is in defending himself or herself in a trial of

3   this magnitude.  And so it is true I didn't have a Fifth Circuit

4   case that cited that specifically, but I did see a Seventh

5   Circuit case that discussed that.

13:39:50   6          **THE COURT:**  Very well.  Any other points you'd like to

7   make, sir?

13:39:53   8                  **MR. McCRUM:**  No, sir.

13:39:56   9                  Any other questions, Your Honor?

13:39:57  10          **THE COURT:**  Not right now.  Thank you.

13:39:59  11          **MR. McCRUM:**  Yes, sir.

13:40:00  12          **MR. NOTHSTEIN:**  Thank you, Your Honor.

13:40:02  13          **THE COURT:**  And, again, identify yourself for the

14   record.

13:40:04  15          **MR. NOTHSTEIN:**  Yes, Your Honor.  Peter Nothstein from

16   the Department of Justice.

13:40:07  17                  Your Honor, going off the two points that the Court

18   just asked Mr. McCrum to address, I'd like to take those in

19   turn.  In fact, I'll go backwards, if you would.

13:40:14  20                  The point about family and friends, I -- we have

21   looked for a case where there is support for or a judge finding

22   that as the reason to transfer a case.  We were not able to find

23   one, either.  I simply want to point out that the case that

24   Mr. McCrum cites and just referred to, that's *Orona-Ibarra*.

13:40:29  25                  That case involved a person actually being moved from

Texas where he was, you know, found after having entered country

illegally, moved to Illinois and then, having been charged there

and tried -- or attempted to be tried in Illinois.  So that's

what the court was referring to as far as strange locality,

being moved sort of a large distance across the country.  It was

not intradistrict transfer whatsoever.

On the point about the witnesses, Your Honor,

Mr. McCrum has volunteered -- we have not asked him to identify

the names of the witnesses specifically, but he volunteered

these four categories of witnesses he would call in his motion.

The government has, I think, put forth compelling arguments, at

least, that preliminarily say why those witnesses' testimony may

not be admissible.

Notably, Mr. McCrum does not address that in his

response whatsoever.  So we could end up in a situation where,

even if Mr. McCrum, in good faith, intends to call these

witnesses, that none of their testimony is admissible.  And as

we say in our papers, the case may have been moved for witnesses

that never testify at all.

I think that, along with the -- the government's point

about the pretrial publicity, which is notable in this case --

we cited -- I believe, it's 34 articles that have been written

since February in the local paper where the jury will be called

from.  It's one of the reasons why the case was brought in

Houston, not in McAllen.

13:41:45 1       I think those all weigh in favor of keeping the case

2  here in Houston. No court has found that a defendant has a

3  right to an intradistrict transfer. The Court asked the

4  important question, which is when the Sixth Amendment is talking

5  about being hailed into a foreign jurisdiction or somewhere far

6  from home, they're talking about the districts.

13:42:03 7       In fact, the law has been changed. In 1966, Federal

8  Criminal Rule of Procedure of 18 was changed to eliminate the

9  right to an intradistrict transfer. I think that's important

10  when Mr. McCrum talks about public policy concerns in his

11  papers. Those have been weighed, and they have come on the

12  favor of not entitling defendants to intradistrict transfers.

13:42:22 13       As the government says, we have serious concerns about

14  the ability to seat a jury that would be fair to the defendant

15  because it wouldn't have been subjected to a year of publicity

16  about this case, potentially making up their minds before the

17  defendant ever takes -- or is ever put on trial. That was why

18  the government brought the case in Houston. That is why the

19  case should remain in Houston, Your Honor.

13:42:42 20      **THE COURT:** Without question, though, it seems to me

21  that a large number of the witnesses, potentially, for the

22  prosecution and, perhaps, the defense would be traveling from

23  the McAllen division to come to this division, be it those who

24  participated in the crimes alleged or those who would be

25  speaking to the evidence necessary for a conviction or

1    acquittal.  So in that regards, what makes this division more

2    convenient, if at all, than the McAllen division?

3        MR. NOTHSTEIN:  Well, from the government's

4    standpoint, Your Honor, our witnesses -- first of all, I don't

5    believe we have a significant number of witnesses who are going

6    to be testifying.  And from the government agents, FBI and so

7    forth, that are going to be coming, the government is ready for

8    those witnesses to travel.  We have no objection to it

9    whatsoever.

10        I mean, frankly put, Texas is a large state.  So there

11   could be a large amount of travel even if you're -- everything

12   happened in the Houston division, which is quite sizeable.

13        Secondly, with regard to the defendant's witnesses,

14   again, I think we come back to the point of whether or not there

15   actually will be 15 witnesses who can offer admissible testimony

16   in the trial.  And there are times when it's simply -- there is

17   some inconvenience.  The law does not say that any inconvenience

18   whatsoever entitles a defendant to an intradistrict transfer.

19        In fact, I think some of the cases we cited say that

20   -- acknowledge there will be some inconvenience that will

21   happen, but there are overriding concerns, I believe, in this

22   case, which makes the trial here in Houston better in the

23   interest of justice.

24        THE COURT:  When you say "concerns," you've only

25   spoken to, I believe, the publicity, slash, seating a jury in

1   the McAllen division.  Are those the concerns, or are there --

2   or are there others?

13:44:33  3       MR. NOTHSTEIN:  Those are our primary concerns,

4   Your Honor, yes.  And I think that if the Court is inclined

5   to -- or is considering the witnesses or the convenience to the

6   defendant's witnesses, I think there should be some offer of

7   proof as to the nature, the categories -- I'm not asking for the

8   identities of witnesses or for Mr. McCrum to commit to this --

9   and some discussion about whether or not that testimony actually

10  will be admissible.

13:44:55  11      As I've said, we put forth reasons why it would not be

12  admissible as described and volunteered by Mr. McCrum, and he

13  has not addressed those concerns one bit.  I think that's

14  something the Court should look into if the Court is so

15  inclined.

13:45:15  16      THE COURT:  Very well.

13:45:17  17      MR. NOTHSTEIN:  Thank you, Your Honor.

13:45:20  18      THE COURT:  Counselor, the other point that I have

19  before me, which is a very important one because -- you have

20  filed multiple motions to allow this defendant to travel,

21  specifically, I know, to San Antonio where your office is

22  located and to visit with you, and then again to Austin, as

23  well.

13:45:47  24      That's not to suggest that the defendant traveling to

25  another locale to see his attorney or for family visits equates

1  to convenience to travel for trial, but it does demonstrate that

2  this is not a witness [sic] that is impeded by having to travel,

3  when necessary, for purposes of his legal defense, such as to

4  San Antonio to visit with his legal counsel.

13:46:18  5       And I believe -- I believe the government cited four

6  various motions that were filed, and in the final one being,

7  Don't come back to me if you're just going to San Antonio to

8  visit your lawyer, that that's understood.

13:46:36  9       So with that being an understanding of the defendant's

10  ability to travel, how do you now tell me that the defendant

11  having to come to the Houston division imposes this burden on

12  him?

13:46:50  13       **MR. McCRUM:**  With respect to the travel to San Antonio

14  and Austin, Judge, it is, as you know, half of the drive to

15  Houston.  One is a six-hour drive as opposed to a three-hour

16  drive, first of all.  Secondly, the -- the expense that is

17  incurred by the defendant in those travels to Austin and

18  San Antonio are only the cost of gas because he has his sons in

19  each city who are arranging for his stay when they [sic] come to

20  visit him [sic] and when he comes to visit me, and so he's not

21  having to incur that expense.  That is one distinguishing

22  factor.

13:47:24  23       The second would be this -- that is one overnight

24  stay, perhaps two, as opposed to a two-week stay in Houston,

25  which is substantial -- substantially more financial burden on

1  him and his wife.  But more so, Judge -- to me, the most

2  compelling aspect of -- and response to that argument by the

3  government is that I'm talking about 15 or so witnesses that I

4  truly am going to call.

13:47:50  5       I'm going to -- despite what Mr. Nothstein is saying,

6  I truly believe they're relevant, material and admissible, and

7  it is -- it is the ability to have them there when I'm --

13:48:05  8       **THE COURT:**  You're not suggesting that if, in fact,

9  this trial is held here in the Houston division, that these

10  witnesses would become unavailable to you, are you?  You're just

11  suggesting that it's more of a burden for them to appear on the

12  defendant -- or appear in the defendant's case in chief in

13  Houston as opposed to McAllen.  You're not suggesting

14  unavailability, are you?

13:48:32  15       **MR. McCRUM:**  Judge, I have no question of the power of

16  your subpoena power.  That is not the issue.  If we want a body

17  here in Houston, you can make them come, if you deem it

18  appropriate.  I understand that.

13:48:44  19       From a practical standpoint, in my 33 years of doing

20  this, Judge, if a witness cannot come voluntarily and I have to

21  force him or her to leave whatever life circumstance they are

22  finding it difficult to leave, then I start losing witnesses.

13:49:00  23       The same thing's happening right now in Austin.  I'm

24  in Austin federal court right now in the middle of a trial

25  before Judge Xavier Rodriguez.  I've lost -- I'm going to be

1   putting on my evidence now this coming week.  We've been two

2   weeks into this trial.  I've lost three witnesses already

3   because of their family situations and whatnot.  They can't make

4   it to Austin, and two are in state, and one is in another state.

13:49:24  5        And as a practical matter, I don't want to force it.

6   I don't know how they're going to be as a witness once they get

7   here, their demeanor, their -- it just -- as a practical matter,

8   Judge, it doesn't work.

13:49:34  9        Yes -- physically, can we get the bodies here?  Yes,

10  Judge, but --

13:49:39 11        **THE COURT:**  Well, the facts won't change with a

12  subpoena or without a subpoena.  The facts are the facts, and to

13  the extent -- I understand --

13:49:47 14        **MR. McCRUM:**  Memories are memories --

13:49:49 15        **THE COURT:**  And --

13:49:49 16        **MR. McCRUM:**  -- and they somehow get --

13:49:50 17        **THE COURT:**  I was going to say demeanor.  I --

13:49:52 18        **MR. McCRUM:**  Okay.

13:49:53 19        **THE COURT:**  I -- I understand the demeanor of a

20  subpoena versus not having a subpoena --

13:49:58 21        **MR. McCRUM:**  Yes, sir.

13:49:58 22        **THE COURT:**  -- but the facts won't change,

23  necessarily, and so I just want to make sure that we're

24  talking --

13:50:06 25        **MR. McCRUM:**  We're talking on the same language,

Judge.

      **THE COURT:** Okay.

      **MR. McCRUM:** I know you have the power to make them come here, and I could ask you to make them come here. I could --

      **THE COURT:** Okay.

      **MR. McCRUM:** -- you know, but that's not the practical reality, Judge, in my experience.

      **THE COURT:** Yes, sir.

      **MR. McCRUM:** And -- and some of these are aged people. Some of these are professional people. As far as the family support, you've -- in response to what counsel just said, is that that other case had to do with an Illinois and Texas issue, a multistate issue.

      Well, that's true, but there's two responses that came to my mind. One is that we are talking about one of the largest districts in the United States. This is not the Eastern District of Mississippi and the Western District of Mississippi.

      This is huge. This is a huge burden to travel to and from across for six-hour -- 12-hour round trip for some of these folks -- for all of these folks, I would submit.

      And secondly, Judge, it's the -- the age of the people that we're talking about. I provided the Court with an affidavit of -- of Mr. Delgado, which he lists the family and support of -- of -- that he desires his siblings. They're all

1    in their late 60s, early 70s, Judge, and so that's quite a

2    different dynamic of being able to ask them to be here for --

3    for that support.

13:51:32  4          This -- at this distance.  And so while that argument

5    by counsel may be perfectly appropriate in 80, 90 percent of the

6    districts across the country, it -- this is a unique situation

7    here in this district.

13:51:48  8          With respect to Rule 18 and his -- his indication that

9    it removed the right of a defendant to do that, he's entirely

10   correct, but what the court did not do in fashioning that rule

11   is remove this Court's discretion to consider those factors.

13:52:09 12          And, indeed, the language, as I put forth in my

13   motion, it's very, very notable that the government must

14   prosecute in the district, but within the district, the Court

15   must set a trial taking into consideration the convenience of

16   the defendant, which I submit includes all of his witnesses'

17   availability, his support, everything else.  It's not just him

18   personally -- any victim, the witnesses -- well, there it

19   says -- and the prompt administration of justice, which has been

20   interpreted primarily to mean to a speedy trial issue.

13:52:44 21          **THE COURT:**  Well, in the prompt administration of

22   justice, one of the things that I had thought about before

23   walking out here, after reading the briefing, was that the

24   indictments in this case came out of a Houston grand jury.  I

25   don't know if that's of any moment to you or not, but the

citizens who returned the indictments in this case are in this division.

I don't know if, again, that's of any moment to you, but that was something that I thought about when I thought about the administration of justice portion of this.

**MR. McCRUM:** And they certainly have the right to do that, as Rule 18 provides, is that they can -- they can prosecute a case wherever in the district that the -- the locus of the crime exists. But nevertheless, from the public policy standpoint, that's quite a different story of where the trial should occur, and -- and I set out in the best way I could in the pages of my motion the really strong language from the Supreme Court and other courts of the public policy concerns behind the -- the issue of venue. Not only districts, but divisions.

And -- and -- and Rule 18 speaks to the focus on the witnesses, defendant, and victim; does not speak to the government's concern of pretrial publicity. Indeed, that argument now suggests that every high-profile case in this district must be brought in Houston, and that's -- that cannot be the case, Judge, and that's exactly what they're arguing.

**THE COURT:** My final question for you, because you requested a hearing on this motion -- and without question, I know the importance of this motion to your client. I've given you the opportunity to present anything that you would like,

1    other than your briefing.  So that moment is now.

13:54:50 2    Is there anything else, other than your final -- your

3    fine oral argument and presentation and your briefing that you

4    would like to present to me other than what you've done?

13:55:02 5    **MR. McCRUM:**  The only other thing that I would like to

6    add, in addition -- I think I've already offered, if the Court

7    deem it necessary, the opportunity for an *in camera* more

8    specific presentation.  But the Court is not asking that, so I'm

9    fine with that.

13:55:17 10    **THE COURT:**  Well, no, I want you to be fully

11    comfortable in the record before me before I make my decision.

13:55:23 12    **MR. McCRUM:**  Well, I think the only way --

13:55:26 13    **THE COURT:**  If you --

13:55:26 14    **MR. McCRUM:**  -- that I'm thinking I should push that

15    opportunity, if the Court is -- because there's some question by

16    the government that I may not really call these people, and they

17    may not be relevant.

13:55:36 18    **THE COURT:**  I'm --

13:55:37 19    **MR. McCRUM:**  I just --

13:55:37 20    **THE COURT:**  I'm not accepting that as an argument.

13:55:40 21    **MR. McCRUM:**  Okay.

13:55:41 22    **THE COURT:**  I assume that as part of -- and that's why

23    I asked you now because I don't like putting defendants in that

24    spot of tipping their hand about their defense, and we had that

25    discussion, and you've told me, as an officer of this court,

1    that it is your current trial strategy to present these

2    witnesses.  So I take that at face value.

13:56:07 3         Having said that, the witnesses that you are referring

4    to have been outlined in categories in your amended motion.

5    That's what I have before me.

13:56:19 6         **MR. McCRUM:**  Yes, sir.

13:56:19 7         **THE COURT:**  So with that being the understanding, is

8    there anything else --

13:56:22 9         **MR. McCRUM:**  Okay.

13:56:22 10        **THE COURT:**  -- that you want me to take under

11   advisement prior to making a decision?

13:56:29 12        **MR. McCRUM:**  The only thing that has not been

13   addressed today is -- is the government's -- speaks with respect

14   to admissibility.  The fact that a defense -- that the judge did

15   something legal, and so that's -- that's, by law, a defense to

16   this bribery charge, and they cite some cases, and they say,

17   well, all of these witnesses, then, won't be admissible because

18   it does -- it's of no matter --

13:56:55 19        **THE COURT:**  Again, that's of no moment to me because I

20   assume -- I'm taking, for purposes right now, that you intend

21   to --

13:57:02 22        **MR. McCRUM:**  Thank you, sir.

13:57:03 23        **THE COURT:**  -- call those witnesses.  Whether or not

24   those witnesses are ultimately struck, that will be at time of

25   trial, be it here or McAllen.  And so I'm -- I take you at your

1  word --

13:57:13  2      **MR. McCRUM:**  Thank you, sir.

13:57:14  3      **THE COURT:**  -- that you will call them, and then I'll

4  deal with the secondary issue as to whether or not they'll be

5  able to testify.  That's a separate issue.

13:57:21  6      **MR. McCRUM:**  Yes, sir.

13:57:21  7      **THE COURT:**  Okay.  With that being understood, where

8  are we?

13:57:25  9      **MR. McCRUM:**  The only final point, Judge, is that with

10  respect to the inconvenience to the defendant and not having

11  witnesses available to -- to present a story, I would ask the

12  Court to take a look at that jury instruction for the -- for the

13  primary crime charged, and it talks about the judge having acted

14  with corrupt influence, that he had a state of mind that was --

15  if a money exchange was -- was had, that --

13:57:57  16      **THE COURT:**  I apologize, Counselor.  You lost me

17  and -- in your argument --

13:58:01  18      **MR. McCRUM:**  I'm sorry.

13:58:01  19      **THE COURT:**  -- and so --

13:58:02  20      **MR. McCRUM:**  Let me try again, Judge.

13:58:03  21      **THE COURT:**  You said somebody being unavailable.  I

22  thought we had made a -- kind of reached an agreement that that

23  wasn't on the table anymore.

13:58:11  24      **MR. McCRUM:**  Well, Judge, from my -- I get back to --

25  and maybe I'm stuck on this.

13:58:17 1    THE COURT:  That's a separate issue about what I've

2  called "demeanor" as opposed to being unavailable.

13:58:22 3    MR. McCRUM:  Yes, sir.  Yes, sir.  And to me, the

4  demeanor and, all of a sudden, a witness's recollection is

5  greatly affected by whether or not it inconveniences that

6  defendant [sic] to be at trial.

13:58:34 7    THE COURT:  I -- I heard your argument on that --

13:58:37 8    MR. McCRUM:  Okay, Judge.  That's all I have to say,

9  then.

13:58:39 10   THE COURT:  Okay.  All right.

13:58:39 11   MR. McCRUM:  Yes, sir.  Thank you.

13:58:40 12   THE COURT:  And, Counselor, one final opportunity.

13  Anything else you wanted to present?

13:58:47 14   Counsel, anything --

13:58:47 15   MR. McCRUM:  Oh, I'm sorry.  I thought you were

16  talking --

13:58:49 17   THE COURT:  No.

13:58:49 18   MR. McCRUM:  No, sir.  Thank you.  That's all.

13:58:50 19   THE COURT:  Okay.  All right.  We're clear.

13:59:27 20   Counselor, do you have anything else?

13:59:30 21   MR. NOTHSTEIN:  Your Honor, if there's anything

22  specific you'd like me to address, I'd be happy to do that.  The

23  one point I wanted to make, because you mentioned, as you were

24  walking out here, you were thinking about sort of the prompt

25  administration of justice, one of the important factors the case

1  laws talked -- case law talks about.

2      One thing that we mention in our papers I just wanted

3  to re-emphasize or bring the Court's attention back to is

4  regarding the -- the court docket, prompt administration of

5  justice, which are relevant factors under the case law.  McAllen

6  is one of the busiest courthouses in the country, which I'm sure

7  this Court is well aware.

8      I know, from personal experience being down there,

9  they're bringing in, I think, approximately around 150 people a

10  day.  There are three judges.  And while I know that the present

11  motion would contemplate Your Honor trying the case in McAllen,

12  there, also, is limited space.

13      If this -- Your Honor, you try this court -- this case

14  down there, one of their courtrooms for two weeks, that's two

15  weeks that one of those judges is displaced, and that would be,

16  I think, a significant burden on the McAllen courthouse.  I

17  think that is -- is an appropriate consideration as well,

18  Your Honor.

19          **THE COURT:**  Thank you.

20      Before coming out here, I actually contemplated taking

21  this matter under advisement, and -- so I read the briefing

22  carefully so I would have an understanding as to where we would

23  go with the argument and where we would go with informing the

24  Court as to what needed to be properly considered.

25      Counsel, at his last opportunity, raised something

1   that I had already thought about regarding the availability of

2   the facilities in McAllen for a two-week trial, and I, as

3   counsel correctly pointed out, know how busy those dockets are

4   down there and what that would entail.  So I was aware of that.

14:01:44  5   On the other side of this is the defendant's ability

6   to offer up a proper defense in whatever form he decides that

7   may come.  It may come in standing silent at the conclusion of

8   the defendant's case, and if that's -- I mean, I'm sorry, the

9   prosecution's case, and if so, I'm -- there's no ill will to

10  counsel and his representation about calling these witnesses

11  because trials are a fluid thing, and based upon what you see,

12  you may decide that there's no need to offer a defense to what

13  has been offered by way of the prosecution.  That's a

14  seat-of-the-pants decision that trial lawyers and their clients

15  make all the time, and I understand that.

14:02:36 16  The representation to me here as of this moment, based

17  upon what you have seen from the prosecution's hand and argument

18  and indictment and discussions that y'all have had amongst

19  yourselves, is that you do intend to offer up a defense with a

20  category of folks that would, in fact, be required to travel

21  from McAllen to the Houston division.

14:03:06 22  As close a call as this is, I am unmoved by it, and I

23  believe that, based upon the cases that I've seen from the

24  Fifth Circuit that have not compelled an interdivisional

25  transfer when it comes to convenience of the defendant, that

1  this is a proper venue for the case.

14:03:36 2  By way of accommodations, the Court has now moved this

3  case to a time more convenient to the defendant to allow for

4  additional pretrial discovery, and the Court will continue to

5  make itself as accommodating as possible to the defendant and

6  the prosecution in this case. But based upon the case law that

7  I have before me, the briefing of the parties that I have before

8  me, and the fine, fine oral arguments of both counsel, the Court

9  hereby denies the motion to transfer the venue.

14:04:15 10  Counsel, anything else?

14:04:16 11  **MR. NOTHSTEIN:** Not from the government, Your Honor.

14:04:17 12  **THE COURT:** Counsel, anything else?

14:04:18 13  **MR. McCRUM:** No, sir.

14:04:19 14  **THE COURT:** Very well. You're excused. Have a good

15  weekend.

14:04:21 16  **MR. NOTHSTEIN:** Thank you, Your Honor.

14:04:22 17  **MR. JONES:** Thank you, Your Honor.

14:04:23 18  *(Proceedings concluded at 2:04 p.m.)*

19  -o0o-

20  I certify that the foregoing is a correct transcript

21  from the record of proceedings in the above matter.

22

23  Date: January 18, 2019

24  */s/ Heather Alcaraz*
     Signature of Court Reporter

25