UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATED OF AMERICA § | |
| § | |
| v. § | CASE NUMBER 18-CR-115 |
| § | |
| RODOLFO "RUDY" DELGADO § | |

## AMENDED MOTION TO RECONSIDER CHANGE OF VENUE
## FOR TRIAL PURPOSES ONLY

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES RODOLFO "RUDY" DELGADO, Defendant, by and through his undersigned counsel, and files this Amended Motion to Reconsider Change of Venue for Trial Purposes Only, and states the following in support there of:

### I. Status of Pleadings.

A hearing was held on Defendant's Amended Motion to Change Venue for Trial Purposes Only. To undersigned counsel's recollection, the Court questioned the extent of the Court's discretion (legally and/or administratively) to grant Defendant's motion insofar as it requests transfer from one division to another within the same district. Ultimately, the Court denied Defendant's motion.

For several reasons, Defendant filed a Motion to Reconsider the Court's ruling. The motion remains pending. *See* Docket No. 76.

Now, for three additional reasons, it is necessary that Defendant present this Amended Motion to Reconsider. So that the Court does not have to re-read that which was included in Defendant's initial Motion to Reconsider, this Amended Motion to Reconsider is divided into

several sections, two of which were presented in Defendant's initial Motion to Reconsider filed at Docket No. 76, and one of which is the added section in this Amended Motion:

> II. <u>Reasons for Amended Motion</u>.  This is a new section added in this Amended Motion to Reconsider, and includes the entirety of new argument raised in this amended motion.
>
> III. <u>New Policy in Southern District of Texas</u>.  This section was in Defendant's initial Motion to Reconsider, and is reprinted in this Amended Motion without edit.
>
> IV. <u>Hardship on Defendant, Witnesses, and Defendant's Family</u>.  This section also was in Defendant's initial Motion to Reconsider, and is reprinted in this Amended Motion without edit.
>
> V. <u>Request for Reconsideration</u>. This section also was in Defendant's initial Motion to Reconsider, and is reprinted in this Amended Motion without edit.

## II. Reasons for Amended Motion.

In Defendant's initial Motion to Reconsider, Defendant presented two reasons for the Court to reconsider its prior ruling:

1. A proposed revision to court rules in the Southern District of Texas, which directly address a district court's discretion relative to transfers of cases from one division to another; and,

2. Additional information relative to the hardship that will be suffered by Defendant, his witnesses, his family, and thus his ability to effectively confront the evidence against him at trial.

In its response to Defendant's Motion to Reconsider, the Government argued:

(1) It was only "a *proposed* change to a local rule . . . that has not been approved, adopted, or enacted. . . . The process anticipates that the rule may never be adopted."

(2) The described hardship in Defendant's Motion to Reconsider did not present any newly discovered evidence, as the Court already considered "that members of his family may

2

not be able to attend" and that "anticipated defense witnesses are located in McAllen, not Houston."

See Govt's Response, Docket No. 80, emphasis in original.

This Amended Motion not only re-urges the two arguments in Defendant's initial Motion to Reconsider, but adds the following:

### A. New High-Profile Public Corruption Indictments in McAllen Division.

Subsequent to this Court's hearing on Defendant's Motion to Change Venue, the same prosecutors assigned to the instant case pursued and obtained indictments against numerous public officials in the McAllen Division on non-related alleged public corruption bribery allegations. *See United States v. Leonel Lopez, Jr.,* Cause No. 7:19-cr-00501, and *United States v. Ricardo Quintanilla, John F. Cuellar, Arturo C. Cuellar, and Daniel J. Garcia,* Cause No. 7:19-cr-00522.

As this Court is aware, the Government initially argued in the instant case the following justification for its unilateral choice to pursue prosecution in Houston, Texas:

> [D]efendant is a well-known public official in the relatively small McAllen area community and active candidate for judicial office. The government anticipated that this case would garner significant media attention in the McAllen Division, and it has. This coverage, coupled with the defendant's profile in the community and status as an active candidate for judicial office, suggest that picking a jury without prior knowledge of the defendant or his charges will be challenging, if not impossible.

*See* Govt Response, Docket No. 61, pp. 1-2. Rather than issues of Houston witnesses or the situs of the alleged crime being in Houston (neither of which supports prosecution in Houston), the Government's sole argument used to justify prosecution in Houston was the defendant is a high-profile public official in McAllen and seating a jury in McAllen would be difficult.

The facts that have been published relative to the two recently-indicted cases in McAllen, however, belie that argument. The facts of each of these cases demonstrate that both of the cases

3

involve high-profile local officials, local companies, millions of dollars in alleged bribes for approval of public contracts, all of which go to local governance:

| **Alleged Official** | **Alleged Office** | **Allegation** |
|---|---|---|
| Leonel Lopez, Jr. | Rio Grande City Municipal Judge | $4,000,000 paid to Lopez as bribes in connection with $38M Water Treatment Contract |
| John F. Cuellar | Weslaco City Commissioner | Accepting $1,398,000 in bribes in connection with county contract |
| Arturo C. Cuellar, Jr. | Hidalgo County Commissioner | Accepting $1,398,000 in bribes in connection with county contract |
| Gerardo Tafolla | Weslaco City Commissioner | Accepting bribes in connection with county contract |
| Daniel Garcia | Rio Grande City Consolidated Indep. School District Board of Trustees | Accepting bribes in connection with county contract |

Both of these newly-indicted federal cases have received widespread media attention, one of the factors cited by these same prosecutors the instant case to justify prosecution of Defendant Delgado in Houston. Unlike the instant case against Defendant Delgado, the spectre of being unable to seat a fair jury in McAllen was apparently not a reason to pursue these new indictments in Houston or some other Southern District Division. Despite the fact that the same form of media attention has followed the public accusations against long-established public officials in the McAllen Division, the Government chose prosecution in the McAllen Division. Accordingly, it does not appear fair that Defendant in the instant case is being treated differently from other similarly-situated citizens.

## B. *Relevant Case Law.*

This is not the first time the Southern District of Texas has experienced selective and inconsistent forum shopping by the Government. Long ago, the Fifth Circuit and Supreme Court each addressed a situation involving a high-profile prosecution originally filed in the Corpus Christi Division of the Southern District of Texas. *See Parr v. United States,* 225 F.2d 329 (5th Cir. 1955), *affirmed* 351 U.S. 513 (1956). In *Parr,* the Government initiated a tax fraud prosecution

4

against George Parr in the Corpus Christi Division. George Parr was a former county judge in Duval County, Texas, and at the time of the indictment was a prominent public figure who was suspected of illegally controlling public affairs from behind the scenes. His father was Archie Parr, the reputed "Duke of Duval", who was a county commissioner and state senator long suspected and investigated for public corruption.

The Government filed its indictment against George Parr in Corpus Christi, Texas. As observed by the U.S. District Judge considering Parr's motion to change venue, however, there was widespread media attention in the Corpus Christi area, all of which was "unfavorable and sometimes most unfavorable" about George and Archie Parr. *See Parr v. United States,* 225 F.2d 329, 333 (5th Cir. 1955). On defendant's motion to change venue to a different division within the Southern District, the district court found that "there is so great a prejudice against defendant in the Corpus Christi Division that he cannot obtain a fair and impartial trial there in this case." *Id.* The Government objected to transfer to the Laredo Division, claiming that "it would or might be under a 'severe handicap' in trying [the defendant] in Laredo" because of defendant's perceived influence over the Laredo Division electorate. *Parr v. United States,* 351 U.S. 513, 514-15 & n.7 (1956). The district judge granted the motion over the Government's objection, and transferred the case to the Laredo Division. *Id.* at 514.

Having lost its battle to keep the case from being transferred to Laredo, the Government obtained a new indictment in the Austin Division of the Western District of Texas for the same offenses, and the next day moved for leave to dismiss the Southern District indictment. *Id.* The court granted the motion over the objection of the defendant and the case was dismissed. *Id.* Defendant appealed to the Fifth Circuit, but his appeal was rejected on procedural grounds on the basis that the decision to dismiss the Southern District case was not an appealable order. He

appealed to the Supreme Court, but his appeal was rejected again on the same procedural grounds, finding that the decision to dismiss the Southern District case was not a "final appealable" order. *Id.* at 516-521. Both cases were split decisions, with the majority in each deciding to not address the merits of the venue issue: "Since we conclude that the order in question was not appealable, we do not reach the merits." *Id.* at 516. The dissenting opinions in each case, however, did address the merits of the venue issue and the Government's actions.

In his dissenting opinion, Fifth Circuit Chief Judge Benjamin Franklin Cameron challenged the Government's application of discretion:

> It was in a jurisdiction pervaded by that atmosphere that the Government initiated this prosecution [i.e., prosecution in the Corpus Christi Division]. In so doing, the Government's attorney asserted that a precedent, observed for twenty years, of bringing such prosecutions at Austin, was broken. Having the right to prosecute at several other points, it chose as the battleground upon which appellant's liberty would be decided by a community in which the Government would have had all of the advantage and the appellant would have had a hard uphill fight.
> . . .
> Are we to assume, as the court below manifestly assumed, that venue is still the prime prerogative of prosecutors to be used in a situation like this one to gain an advantage for the Government ***or to escape from a position of less advantage in which the Government found itself as the result of its own election? I do not think so.*** [1]

*Id.* (tax evasion cases typically charged in Austin Division, the locale for tax filings) (emphasis added).

The *Parr* decisions in the Fifth Circuit and Supreme Court are instructive to the issues before this Court, as they reflect the opinion of the Chief Judge of the Fifth Circuit, the Chief Justice of the Supreme Court, and three other Supreme Court Justices who all issued strong objections to the Government's manipulative actions. *See Parr v. United States,* 225 F.2d at 333, Chief Judge Cameron, dissenting; and *Parr v. United States,* 351 U.S. at 521-524, Chief Justice

---

[1] The Government's motive to "escape from a position of less advantage" in the instant case is a factor this Court can consider, where such motive was apparently different in the other recently-charged cases.

6

Warren and Justices Black, Douglas and Clark, dissenting. The dissent in each case addressed the merits of the Government's actions, with the Supreme Court Justices finding that the Government's decision to "shop around to find a court it deems most favorable to try defendants" was unfair. *Id.* at 523. The dissenting Justices found the district court's decision to dismiss the case in Laredo was error, as Rule 21 of the Federal Rules of Criminal Procedure allows defendants to obtain changes of venue in order to get fair and impartial trial. *Id.* at 523. This particular finding is interesting, in that Rule 21 permits defendants to request transfers from one district to another, not from one division to another. *See* F.R.Cr.P. 21. Yet, the four Justices found that the "full effect" of Rule 21 would be accomplished by honoring the defendant's request to transfer one division to another, which the district court found to be warranted. *Id.* at 524.

The *Parr* cases should be considered in the analysis of the instant case, where the Government has taken two completely different paths on cases charging public corruption occurred by public officials in the same judicial division. The Government's decision to prosecute the instant case in Houston is contrary not only to its recent indictments in the McAllen Divisions, but is contrary to the long-standing practice of charging high-profile corruption cases in the division where the public official resides and works. As noted in his original motion to change venue for trial purposes, Defendant listed twenty different public corruption cases where the defendant/public officials were indicted in the same division where the alleged crimes occurred. *See* Exhibit A (list of public corruption prosecutions charged in same division as alleged crime, re-attached here for ease of reference). There is no justifiable or fair reason for Defendant to be treated differently.

Chief Judge Cameron found it appropriate in his dissent to remind the legal community of the standards that should govern these types of venue situations where the Government's

application of discretion runs contra to long-standing practice and without compelling, justifiable reasons:

> This thesis was well developed by a paper entitled 'The United States as a Litigant' read May 30, 1952 to the Judicial Conference for the Fifth Circuit, and a part of the records of that Conference, by Hon. Robert B. Troutman of Atlanta, Georgia. Here is an excerpt from that paper:
>
> 'With this vast power, and these tremendous resources, the United States is, indeed a formidable adversary * * * The ordinary citizen stands in awe when confronted with such litigation. * * * It is a Goliath, a giant in power, whose challenge a modern Saul and all his Captains might with good reason hesitate to accept. More often than not, however, the citizen has no choice. The initiative is on the side of the Government.
>
> 'The odds apparently are uneven. * * * He is assured, however, that the end and aim of his Government is the protection of his freedom and his 'rights'. In an even broader sense, justice to the individual is its aim. History tells him that those 'rights' were established by litigants with the courage to combat tyrants who sought to deny them, before judges who had the courage to uphold them. In such contests our profession has supplied both the adversary advocates and the judges. The latter have been set apart and charged with responsibility of seeing that justice be done to the individual and to the Government. * * * The seal of the Department of Justice to which they belong contains a motto, 'Qui pro Domina Justitia Sequitur'. It appears on the flag which flies over the Department's office. Liberally translated, 'The Department of Justice Prosecutes in Behalf of Our Lady Justice'.'

*See Parr v. United States,* 225 F.2d at 340, n.12.

These principles are no less compelling in the instant case, and are perhaps more. Whereas in the *Parr* case the Government could at least point to the fact that tax prosecutions are typically brought in Austin, Texas, the ultimate choice by the Government after its ploy to proceed in Corpus Christi was rejected. Here, there is no substantive link to support a trial in Houston, made even more clear by these same prosecutors' decision to prosecute the two recent cases in the McAllen Division. For this and the reasons that follow below, Defendant respectfully asks this Court to reconsider its ruling.

8

### III. New Policy in Southern District of Texas.

On January 15, 2019, undersigned counsel received an email from the "Texas Southern District Court" (ecf@txsd.uscourts.gov) that stated the following:

> The United States District Court for the Southern District of Texas solicits public comment on proposed Criminal Local Rule 18 - Place of Trial Within the District.
>
> The proposed Criminal Local Rule can be reviewed on the court's web site: https://www.txs.uscourts.gov/content/request-public-comment-proposed-local-rule-crlr-18
>
> Comments may be sent to district_comment@txs.uscourts.gov
> The deadline for comments is Friday, February 15, 2019.

Undoubtedly, this Court is aware of the email and its content. The email announced a proposed Criminal Local Rule 18, which directly addresses transfers of cases from one division to another within the Southern District of Texas. More specifically, the proposed rule would expressly permit an intra-district transfer if (a) the judge finds that the case was not filed in the proper Division, or (b) the transfer to a different Division would be in the interests of justice, based on the convenience of the defendant and the witnesses and on the prompt administration of justice. Notably, the prosecution's unilateral discretionary choice to seek indictment in a particular division is NOT listed as a factor in the court's decision. The phrase "prompt administration of justice" has been typically interpreted in terms of the timeliness of trial.

As was evident from the hearing on this issue, the Government's sole reason for filing the instant case in Houston, rather than McAllen, was the perceived fear of juror bias in McAllen. The Government could not demonstrate any evidentiary connection (documentary, witness, or otherwise) between Houston and the instant case. The multiple indictments returned in the instant case collectively describe acts which allegedly form the basis for three distinct charges of Bribery, three distinct charges of Travel Act violations, and a charge of Obstruction of Justice. The three

alleged charges of Bribery (the alleged receipt of cash by Defendant in Hidalgo County, Texas, in exchange for an official act taken by Defendant in his capacity as a Texas state elected judge sitting in a Hidalgo County court) and the alleged charge of Obstruction of Justice (the alleged transmission of a communication from Defendant to an attorney) all describe conduct which wholly occurred within the McAllen Division, specifically Hidalgo County, Texas. The three alleged Travel Act violations all are based on an alleged transmittal of communication via "a telephone and a wire" for the alleged purpose to promote the commission of the same three Bribery charges (i.e., the payment of cash in exchange for an official act), with the added jurisdictional fact of the State of Texas' receipt of federal funds.

For this reason alone, Defendant submits that the filing of the instant case in Houston, albeit a technically legal discretionary act on the part of the Government, was not a filing in the "proper Division." The revision of this Court's local rules makes evident that Courts within the Southern District need not feel constrained by the Government's unilateral choices of forum. The proposed local rule, which will undoubtedly be incorporated into approved rules of the court, encourages courts to examine the defendant's place of residence, the location of witnesses, and the situs of the alleged crimes. All of these factors point toward the McAllen Division as the site of trial. The Government's fear of a perceived probability of bias has no evidentiary basis, particularly where all other notable prosecutions involving alleged corruption have been brought in the Division where the crime allegedly occurred. *See* Exhibit A (attached hereton, and as an attachment to Defendant's Amended Motion to Change Venue of Trial at Docket No. 59).

In addition to all of the factors described above and in Defendant's initial and amended motions to change venue, Defendant offers additional information for the Court to consider.

## IV. Hardship on Defendant, Witnesses and Defendant's Family.

After the hearing held before this Court, numerous persons provided undersigned counsel with statements relative to their health, caregiver and other factors which significantly impact their ability to travel to Houston for trial in the instant case. These statements are attached to this motion as Exhibit B.  Additionally, we anticipate Defendant will call as a witness Dr. Luis Delgado, Jr., Defendant's brother, who is a physician practicing in McAllen.  Dr. Delgado wrote an email that outlines the medical issues that Defendant Delgado's family members currently face. This email is copied on Exhibit C to this motion.  Indeed, it is evident that there are significant issues that his family members are facing, rendering it impossible to travel the 13-hour + round trip from McAllen to Houston and back, in addition to not being healthy enough to remain in Houston for any period of time. Plus, the necessity of Dr. Delgado having to leave his practice of medicine by having to travel to Houston, where there is no compelling reason given by the Government to warrant such an intrusion, is an unwarranted hardship on scores of people caused by the Government's perceived and unfounded fear.

As was presented to this Court, the Seventh Circuit Court of Appeals recently recognized the important value of a defendant's "support system" he would lose if not allowed to face trial in the area of his residence. *United States v Orona-Ibarra,* 831 F.3d 867, 872-73 (7th Cir. 2016).

> While the Supreme Court has not set forth a comprehensive discussion of the values protected by the constitutional venue provisions, it has identified some. ***These include the protection of a defendant from prosecution in a place far from his home and the support system that is necessary to mount an adequate defense. . .*** Given the nature of the right, there is no mechanical test to determine constitutional venue. Rather, the test is best described as a substantial contacts rule that takes into account the site of the defendant's acts, the elements and nature of the crime, the locus and effect of the criminal conduct, and the suitability of the district for fact-finding. These are real limitations: ***the Court has cautioned that venue provisions in Acts of Congress should not be so freely construed as to give the Government the choice of tribunal favorable to it."***

11

*Id.* at 872, emphasis added & citations and quotes omitted.

Defendant urges this Court to reconsider its ruling. Although the proposed change of local rules is not yet in effect, there is little doubt that it will be by the time of trial. It is now evident that this Court has the full authority of local rules to order transfer of the instant case to the McAllen Division.

As was found by a district court in the Houston Division in a different case, the Government has not offered any evidence from which this Court can conclude that maintaining the case in Houston would serve the need for the prompt administration of justice, nor outweigh the Rule 18 convenience factors that all favor granting Defendant Delgado's request.[2] Similarly, that same Court made findings that are starkly similar to the instant case:

> *Because as explained in Garza, 593 F.3d at 385, Rule 18 presumes that a case should be tried where the offenses at issue were committed, because the offenses at issue are all alleged to have occurred in Laredo, because the defendants and the witnesses all live in Laredo or close thereto, and because the case has no apparent ties to Houston that would serve the need for the prompt administration of justice, Montemayor's motion to transfer to Laredo will be granted.*

*Id.* at **10-11.

---

[2] The Court made the following findings which are important to analysis of the instant case:

> *In light of the Government's failure to show that this case has any ties to Houston and the Government's failure to dispute the facts on which Montemayor bases his argument that all of the relevant factors weigh in favor of holding trial in Laredo, the court concludes that the convenience factors all support granting Montemayor's motion. As to the prompt administration of justice, Montemayor has agreed to waive his speedy trial rights; and because the court has made only a few rulings in this case, the court is not particularly familiar with the case. Moreover, the Government has not offered any evidence from which the court could conclude that maintaining the case in Houston would serve the need for the prompt administration of justice, or outweigh the Rule 18 convenience factors that all favor granting Montemayor's motion to transfer.*

*See United States v. Montemayor,* No. H-13-0039, 2013 U.S. Dist. LEXIS 116499, *10 (S.D. Tex. Aug. 16, 2013).

## V. Request for Reconsideration.

Defendant requests the Court to reconsider all arguments previously made, including those set forth in Defendant's Amended Motion to Change Venue, filed at Docket No. 59. The pertinent factors in the instant case overwhelmingly favor trial in the McAllen Division. The alleged offenses involve (a) the purported payment of cash on multiple occasions by an attorney to a judge in exchange for the judge's official acts in connection with persons on "community supervision" in then-pending criminal cases (that is, persons supervised by probation officers in connection with their sentences); (b) the purported purchase of items at an inflated price; and (c) the judge's purported obstruction of justice by sending a communication to an attorney relative to the cash that the attorney had given to the judge. The state-court criminal cases that are the subject of the indictment all involve different state prosecutors and/or probation officers. During the time of meetings between the attorney and Mr. Delgado, Mr. Delgado was an active candidate in a contested political race for an appellate judgeship in the McAllen, Texas area, and thus in a position to receive donations. Mr. Delgado also assisted in operating a foundation in the name and honor of his deceased son; the foundation gave annual scholarships to students, drawn from an annual fundraising auction.

Undersigned counsel and Defendant anticipate that a minimum of fifteen substantive witnesses will be called by the defense at trial. All of these witnesses live and work in the McAllen area. As this Court is aware, every trial, and in particular every trial that lasts two weeks or longer, carries a relatively unpredictable flow and pace from day to day. This affects an attorney's decisions as to the order of witnesses, the length of witness examination, whether a witness' testimony can be completed in one day or more, etc. Conducting a trial in Houston will necessarily impact to a significant degree the availability of witnesses for the Defendant. Contemplating a six-

hour or more drive one way from McAllen to Houston, with the possibility that a certain witness or witnesses will not go on the stand at the time or on the day anticipated, will cause great inconvenience to the witnesses from McAllen. Whereas if trial were to occur in McAllen, such witnesses could remain "on call", minutes away from the courthouse, and could thereby continue with their obligations and responsibilities to their employers, businesses and families. A trial in Houston would not lend itself to placing a witness "on call" and allowing the witness to resume with his/her life in the interim. This necessarily affects the willingness and/or ability of witnesses to appear in Houston to testify on behalf of the Defendant. The distance between McAllen, Texas, and Houston, Texas is over 350 miles, and takes approximately six hours to drive from one location to the other, assuming no significant delay caused by traffic. None of the acts at issue occurred in Houston, Texas.

      Trial in Houston will cause significant inconvenience to Defendant in terms of expense and the detriment of being away from his residence, and it would deprive him of available witnesses, a valuable support system for him and his attorney, and the availability of family and friends to provide support during trial. Through the Government's unilateral choice of venue in filing the case in Houston, Defendant will be effectively deprived of a jury of his peers, who would understand the cultural, ethnic and locally-unique nuances which the Constitution and Courts have recognized as crucial to an accused. Moreover, public policy dictates that persons should face trial in the situs of where the crime occurred. All of the factors listed in Rule 18 weigh heavily in favor of transfer to McAllen for trial purposes. For all the reasons set forth above, including public policy reasons which focus on the actual situs of the crimes charged, Defendant respectfully urges this Court to transfer the instant case to McAllen for trial purposes only.

Wherefore, premises considered, Defendant requests that the Court transfer the situs of trial in the instant case to the McAllen Division, and for such other and further relief as the Court deems appropriate.

Respectfully submitted,

 /s/ Michael McCrum
Michael McCrum
MCCRUM LAW OFFICE
404 E. Ramsey Road, Suite 102
San Antonio, TX 78216
(210) 225-2285
(210) 225-7045 (fax)
michael@mccrumlegal.com

## CERTIFICATE OF CONFERENCE

As the Government expressed in Court, the Government opposes transfer of trial to the McAllen Division.

*/s/ Michael McCrum*
Michael McCrum

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Amended Motion to Change Venue has been filed electronically on this 2nd day of May 2019 and a copy sent to the United States Attorney's Office, and all other counsel through the Court's electronic filing system.

*/s/ Michael McCrum*
Michael McCrum

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATED OF AMERICA | § | |
| | § | |
| v. | § | CASE NUMBER 18-CR-115 |
| | § | |
| RODOLFO "RUDY" DELGADO | § | |

**ORDER**

On this date came on to be considered the Defendant's Amended Motion to Reconsider Change of Venue for Trial Purposes Only. The Court finds the motion is well-founded and should be granted.

IT IS HEREBY ORDERED that Defendant Rodolfo "Rudy" Delgado's Amended Motion to Reconsider Change of Venue for Trial Purposes Only is granted, and trial of the instant case shall occur in the McAllen Division. All proceedings other than trial shall continue to occur in the Houston Division. By separate order, the Court will enter findings of fact and conclusions of law.

SIGNED AND ENTERED, on this the _____ day of _____, 2019.

_____
UNITED STATES DISTRICT JUDGE