UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| PLAINTIFF | § | |
| | § | |
| V. | § | CASE NO. 18-CR-00115 |
| | § | |
| RODOLFO "RUDY" DELGADO, | § | |
| DEFENDANT | § | |

**DEFENDANT RODOLFO DELGADO'S MOTION FOR JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE VERDICT & MOTION FOR NEW TRIAL**

TO THE HONORABLE JUDGE OF THE SOUTHERN DISTRICT OF TEXAS:

NOW COMES, Defendant Rodolfo Delgado, by and through his undersigned attorney, and, pursuant to Rules 29(c) and 33 of the Federal Rules of Criminal Procedure, files this Motion for Judgment of Acquittal Notwithstanding the Verdict and Motion for New Trial, respectively, and would show this Honorable Court as follows:

**I.    SCOPE OF CONVICTION.**

Defendant was found guilty of one count of conspiracy to commit federal program bribery, three counts of federal program bribery, three counts of travel act violations, and one count of obstruction of justice. For several reasons, defendant respectfully submits that justice demands a judgment of acquittal as to all counts. Given the interplay between Rules 29 and 33 of the Federal Rules of Criminal Procedure, as discussed below, there are equally compelling factors which justify an order from the court granting defendant's motion for new trial, should the Court not grant defendant's motion for judgment of acquittal notwithstanding the verdict. Each of defendant's motions will be addressed below.

1

## II. DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE VERDICT.

### a. Legal Standard.

Rule 29(c) of the Federal Rules of Criminal Procedure provides that a defendant may move for judgment of acquittal within 14 days after a guilty verdict or after the court discharges the jury, whichever is later. Fed.R.Crim.P. 29(c)(1) ("If the jury has returned a verdict of guilty, the court may set aside the verdict and enter an acquittal."). "A motion for judgment of acquittal challenges the sufficiency of the evidence to convict." *United States v. Hope*, 487 F.3d 224, 227 (5th Cir. 2007). A district court must uphold a jury verdict if, and only if, a rational jury could have found each of the essential elements proven beyond a reasonable doubt. *United States v. Gonzales,* 436 F.3d 560, 571 (5th Cir. 2006). If, after reviewing the evidence in the light most deferential to the prosecution, the court determines the evidence gives "equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then reversal is required, and the court must set aside the jury's verdict. *United States v. Hernandez-Bautista,* 293 F.3d 845, 853 (5th Cir. 2002) (affirming grant of judgment of acquittal); *see also, United States v. Elashi,* 440 F.Supp. 2d 536, 544 (N.D. Tex. 2006); *United States v. Herrera*, 2007 U.S. Dist. LEXIS 97410 at * 23; *United States v. Gonzales*, 436 F.3d at 571.

Indeed, "there have been cases in which the court has granted the motion after a verdict [as opposed to prior to the verdict], and there has been favorable comment on 'the value' of this procedure." *United States v. Herrera,* 2007 U.S. Dist. LEXIS 97410, n.13 (W.D. Tex., Dec. 20, 2007) (in certain cases, a judgment of acquittal may be more appropriate post-verdict), citing Charles Alan Wright, Federal Practice and Procedure: Criminal 3d § 464, p. 290 (3d ed. 2000). As observed by U.S. District Judge Royal Ferguson, consideration of a motion for judgment of acquittal after the verdict is returned "allows the jury an opportunity to look at the case, pass upon the facts with a possible affirmation verdict of not guilty for a defendant and at the same time, after proper reservation,

2

maintain its jurisdiction to direct in a proper case an acquittal as a matter of law." *Id.* In the context of the case law cited above, this Court is now in a much better position to review whether evidence gives "equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence."

### b. **Facts Relevant to Defendant's Motion for Judgment of Acquittal**

The jury's verdict stands in opposition of overwhelming evidence of defendant's lack of criminal intent with respect to the charged crimes, and, equally important, the dearth of evidence introduced as to several key elements of the charged crimes. The Government's conspiracy case relies entirely on a speculative finding that an agreement existed, that is, a meeting of the minds or an affirmative understanding, between Defendant and Noe Perez that official acts were to be performed between January 2008 and November 2016 in consideration or exchange for payment of monies and/or the conveyance of a truck. Equally so, the Government's case on the three substantive counts of federal program bribery and the three substantive counts of Travel Act violations rest on assumptions that Defendant received monies with the express intent to commit official acts in exchange for payment of monies. The Government's case on the obstruction count was purportedly based on Defendant's intent to interfere with a federal grand jury investigation relative to his dealings with Noe Perez, yet the Government's evidence was (a) absent regarding Defendant's knowledge of "a federal grand jury" investigation as charged in the indictment, (b) absent in proving Defendant had the state of mind to believe that this text would obstruct a federal grand jury investigation, and (c) absent to show that his knowledge of any potential investigation had anything to do with Noe Perez.

Albeit evidence was introduced by the Government that can be described as inflammatory, sensational, and violative of ethical restrictions relative to *ex parte* communications, the evidence is speculative at its core relative to the actual crimes charged, and certainly not enough to surpass the standard of "equal or nearly equal circumstantial support to a theory of guilt and a theory of

3

innocence." Indeed, the Court's instructions called for a conviction on the crimes charged, not some other non-charged conduct.

The Government's evidence, resting heavily on repetitive inquiries of the harmful nature of *ex parte* night-time communications, created an inflammatory tone that rendered it impossible for a jury to objectively discern the dearth of evidence as to the actual required elements. The degree of prejudice created by the Government's emphasis on such acts, together with the natural degree of prejudice that flows from a case involving allegations of a judge rendering affected decisions, subtly encouraged and allowed the jury to make inference upon inference, without sufficient proof to meet all elements. The evidence, even if viewed through the prism mandated by law, clearly does not support conviction of these counts.

c. **Alleged Conspiracy:  Insufficient Evidence of an Illicit Agreement.**

The essence of the conspiracy count is an agreement. In this case, an agreement to commit federal program bribery that allegedly existed between January 2008 and November 2016. Two key elements of section 371 read as follows:

> *First*: That the defendant and at least one other person made an agreement to commit the crime of Federal Program Bribery, as charged in the indictment;
>
> *Second*: That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose.

Evidence of an agreement between Defendant and Perez between January 2008 and November 2016 consisted solely of Perez' testimony. Although the evidence demonstrated that Perez met Defendant in *circa* 1999, the Government focused on events in 2008 as the starting point of the alleged illicit agreement. Specifically, it was the Government's contention at trial that Defendant's illicit, conspiratorial agreement with Perez began after Defendant gained control of a truck given to Perez by Perez' client. Even more specifically, an alleged agreement between Defendant and Perez to commit federal program bribery, which can be described as: you agree to

4

give me something of value, and I agree to commit an official act in return for this thing you're giving me, and by the way, the value of this transaction between us (i.e., the value of what I'm giving you in my official capacity) has a value of $5,000 or more.

Yet, Perez testified that the truck was taken from him by Defendant without payment and without an agreement, and thereafter Perez "hoped" that it would lead to favorable consideration by Defendant. This is not evidence of an agreement that Defendant entered willfully, knowing the agreement has an unlawful purpose.

Additionally, the Government did not elicit from Perez nor otherwise prove any specific consideration that indeed flowed from this event. That is, there was no evidence of any specific official act committed by Defendant that occurred between 2008 and November 2016 (the month Perez began working as a government agent) that was performed as a result of this alleged agreement. Nor, was there evidence that any act that purportedly occurred as a result of this fictitious agreement had a value of $5,000.

As Perez repeatedly testified, there was never a *quid pro quo* agreement between he and Defendant. On cross examination, he expressly testified there was no "understanding" between the two to commit bribery; that is, no understanding that Defendant will commit an official act in exchange for value given by Perez. At most, Perez described a friendship that developed between he and Defendant which arose from time spent together and Perez' purchases of firewood. And, from that, Perez testified he would continually "hope" that it would lead to favorable consideration, ultimately not knowing whether a PR Bond or other judicial act was granted by Defendant out of friendship, their ongoing relationship, or because the judicial act was actually warranted given the facts of the individual case. The Government never offered proof that any official act performed by Defendant was because of this alleged conspiracy. Indeed, the Government's evidence rested on speculation. Stated differently, the evidence offered at most "equal or nearly equal circumstantial

5

support to a theory of guilt and a theory of innocence."

### d. **Insufficient Evidence of Federal Program Bribery.**

#### i. *Insufficient Evidence of* **Quid pro Quo** *Act.*

Counts 2 through 4 charge federal program bribery in connection with the criminal cases of three distinct persons.

Count 2: Alleged bribery in connection with the criminal case of "Person A";

Count 3: Alleged bribery in connection with the criminal case of "Person B";

Count 4: Alleged bribery in connection with the criminal case of "Person C".

To prove each of these crimes, the Government was tasked to introduce evidence that value was given by Perez to Defendant in exchange for Defendant's official act(s) relative to the criminal case/defendant specifically identified in each count, and that such official act(s) had a value of $5,000 or more. Each count incorporated the specific allegations set forth in paragraphs 1-21 of the indictment.

As to Count 2, the Government was tasked to prove the following facts:

(a) Defendant received something of value from Perez between January 2016 and December 2016, more specifically identified in Paragraph 12, that is, $260 in cash tendered in December 2016;
(b) That Defendant received $260 in cash intending to be influenced and rewarded for his official act(s) in connection with the criminal case of Person "A", more specifically identified in Paragraph 13, that is, the granting of a $5,000 personal bond in December 2016.

As to Count 3, the Government was tasked to prove the following facts:

(a) Defendant received something of value from Perez between January 2017 and December 2017, more specifically identified in Paragraph 16, that is, $260 in cash tendered in November 2017;
(b) That Defendant received $260 in cash intending to be influenced and rewarded for his official act(s) in connection with the criminal case of Person "B", more specifically identified in Paragraph 17, that is, the granting of a $5,000 personal bond.

6

As to Count 4, the Government was tasked to prove the following facts:

(a) Defendant received something of value from Perez between March 2017 and February 2018, more specifically identified in Paragraph 20, that is, $5,500 in cash tendered in January 2018;
(b) That Defendant received $5,500 in cash intending to be influenced and rewarded for his official act(s) in connection with the criminal case of Person "C", more specifically identified in Paragraph 21, that is, the granting of a $5,000 personal bond.

As discussed above, the Government failed in presenting evidence that monies were paid under a *quid pro quo* arrangement between Defendant and Perez. More specifically, no evidence that Defendant would receive the monies with the intent to commit an official act in exchange for the monies. Although the delivery of monies Perez to Defendant is certainly clear in the meetings of December 2016 and January 2017 (not nearly so with respect to the November 2017 event), evidence that monies tendered by Perez on any date were not under the required element of Defendant's knowing, intentional response pursuant to a *quid pro quo* arrangement. Conversely, the evidence only presented an "equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence." That is, the evidence presented through Perez, corroborated by the taped conversations, offered an equivalent theory of monies being tendered for legitimate reasons, unrelated to any alleged agreement in the mind of Defendant to perform subsequent official acts as consideration for the payment of monies. Indeed, Perez so testified that monies were not tendered with any expectation of a return of favorable consideration. Concomitantly, there is no evidence to prove Defendant received such monies under the premise of an expected return of official act.

ii. **<u>Insufficient Evidence of an Official Act Valued at $5,000.</u>**

Another required element is that the official act performed by Defendant had a "value" of $5,000 or more. The Government's theory is that the "$5,000 personal recognizance bond" granted by Defendant had a value of $5,000 or more. A distinction must be made, however, between what

Perez and his client received versus the amount of penalty that Perez' client (the defendant who is bonding out) would face if he violated the bond. Merely because a violation of the bond could cost the client $5,000 does not necessarily equate with a conclusion that the official act rendered by Defendant (i.e., the personal recognizance bond) had this same value. Indeed, the client merely had to sign his name to obtain what he wanted – the intangible receipt of freedom on bond. The question that the Government must have answered with its proof: What is the "value" of a personal recognizance bond?

Clearly, Section 666(a)(1)(B) was intended to cover transactions involving intangibles that are difficult to value. *See United States v. Marmolejo,* 89 F.3d 1185, 1191 (5th Cir. 1996); *see also, United States v. Girard,* 601 F.2d 69, 71 (2d Cir.) (citing case examples: a promise of sexual intercourse is a "thing of value" under bribery statute; a promise to reinstate an employee is a "thing of value"; an agreement to not run in an election; the testimony of a witness; the content of a writing), *cert. denied,* 444 U.S. 871 (1979). The Fifth Circuit held that decisions as to whether a transaction involving intangibles have a value of $5,000 or more require an analysis of "traditional valuation methods." *United States v. Marmolejo, supra* at 1194. In this regard, the Court looked at how much a person in the market would be willing to pay for the thing to be received from the official. *Id., citing Herman v. United States,* 289 F.2d 362 (5th Cir.) (to determine whether value is $5,000 or more, "courts must look at the price a willing buyer would pay a willing seller at the time and place the property was stolen"), *cert. denied,* 368 U.S. 897 (1961); *United States v. Seagraves,* 265 F.2d 876 (3d Cir. 1959) (amount defendants paid for property can form basis for valuation of property). In *Marmolejo,* the Fifth Circuit looked at the amount paid by the briber to the official to determine the value of the property received (i.e., a sheriff allowing an imprisoned person to have visitation by someone to experience sex). *United States v. Marmolejo, supra* at 1194. The Seventh, Eighth, and Eleventh Circuit Courts of Appeals have adopted this same approach in holding that the "thing of value" given by

8

the official can be determined by looking at the amount of bribe paid to obtain that thing of value. *United States v. Brookins,* 52 F.3d 615, 619 (7th Cir. 1995); *United States v. Zimmerman,* 509 F.3d 920, 926 (8th Cir. 2007); *United States v. Townsend,* 630 F.3d 1003, 1011-12 (11th Cir. 2011).

Other courts have observed that instead of looking at the amount paid to the official (i.e., the value of the thing paid by the briber and received by the official), value can be ascertained from the perspective of the briber as to how much is being received from the official. *United States v. Tillmon,* 2019 U.S. App. LEXIS 5621 *37 (4th Cir., Feb. 26, 2019). But even then, the Government must come forward with proof "linking" that valued item received by the briber to the actual services rendered by the official. *Id.*, citations omitted.

In the instant case, the Government sought to prove that $260 in cash was paid to Defendant with respect to the crimes charged in Counts 2 and 3, in exchange for Defendant granting a "$5,000 personal recognizance bond." In such cases, the question is whether the Government proved that the "value" of the thing sought by the briber and given by the official was $5,000, rather than the $260 paid by the briber? Notably, in Count 4, the Government sought to prove that the total monies delivered by the briber to the official, $5,500, was paid for the same exact item the briber received in return for paying $260 twice before, a "$5,000 personal recognizance bond." This qualitative inconsistency of this evidence raises several problems that the Government's proof did not answer:

- Perez testified that the amount tendered to Defendant was not given in exchange for a bond, but rather as a hope that he would receive favorable consideration. Conversely, there is no evidence that Defendant received such funds with the specific intent to be influenced to grant the bond, a required element of the charged offense;

- The Government failed to prove why a "$5,000 PR bond" would "cost" Perez and his client $260 cash on two occasions, but $5,500 on another. The "item" given by the official

9

is the intangible gift of freedom without paying a surety bondsman 10% of the stated bond. The Government failed to prove why a $5,000 PR Bond should have a value of $5,000, where the client being released on bond has not paid $5,000, and will never be obligated such amount unless (a) he violates the conditions of his bond and (b) the court orders that defendant forfeit such amount. Such valuation is speculative, at best, and is contrary to a more accurate valuation method - - the amount one is willing to pay in order to get the PR Bond (i.e., $260).

- The evidence conclusively established alternative theories of innocence: the purposes of paying $260 twice and $5,500 on another occasion were markedly different: payment for firewood and donation for a Defendant's campaign and charitable foundation.

- The Government failed to prove how a "$5,000 PR Bond", where nothing is paid by the client, would have a value of $5,000; whereas a $5,000 surety bond would have a different value, where it merely requires payment by the client of ten percent (i.e., $500.00) to a bondsman. That is, it is not clear from the evidence that a "$5,000 PR Bond" would hold a value of $5,000 by the criminal defendant who is being released from jail. The defendant is merely signing a promise to pay $5,000 should he violate his bond, in lieu of paying 10% to a bondsman to be released on the same amount of surety bond.

Particularly as to Counts 2 and 3, the Government's evidence failed to provide sufficient proof that the value of the item given by the official is $5,000 or more. Moreover, as to Count 4, the Government's evidence fails for internal inconsistency of its own argument and because it failed to present an "equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence" as well as failed to present proof to resolve the apparent and undisputable qualitative inconsistency of proof.

e. **<u>Insufficient Evidence of Travel Act Violations.</u>**

Counts 5 through 7 charge Travel Act violations in connection with three separate covert meetings where monies were allegedly transferred:

Count 5: Meeting between Defendant and Perez on December 13, 2016;

Count 6: Meeting between Defendant and Perez on November 27, 2017;

Count 7: Meeting between Defendant and Perez on January 17, 2018.

As set forth in the Court's instructions, a conviction for these alleged crimes requires proof (a) that Defendant used his telephone (the interstate facility), (b) with the specific intent to promote an unlawful activity (in this case, the state crime of bribery), and (c) subsequent to the use of his telephone, Defendant actually, knowingly and willfully promoted or carried on the unlawful activity. For the reasons set forth above, the Government's evidence failed to present an "equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence."

Defendant concedes the evidence showed his use of his telephone to make arrangements for each meeting. Defendant does not concede, however, that the Government proved he used his telephone "with the specific intent to promote, manage, establish, or carry on [the] unlawful activity" of bribery (the required second element of the charged crime). Indeed, the evidence demonstrated that at the time each telephone transmission occurred (i.e., the jurisdictional linchpin of the Travel Act violations) Defendant did not even know the purpose of the meeting requested by Perez. At most, each electronic interstate transmission using the telephone was for the sole purpose of setting up a meeting to discuss some unknown topic.

To be guilty of the Travel Act crime charged, there must be sufficient proof that there existed a nexus between the use of the telephone and the bribery. *United States v. Blake,* 684 F.Supp. 441, 442 (S.D. Miss. 1988). Indeed, where the use of the interstate facility (in this case, the telephone) is

11

incidental to the illegal crime, there is no Travel Act violation. *Id.,* citing *Rewis v. United States,* 401 U.S. 808 (1971); *see also, United States v. Isaacs,* 493 F.2d 1124, 1146 (7th Cir.), *cert. denied,* 417 U.S. 976 (1974) (use of interstate facility – deposit of checks into federal reserve system – "so minimal, incidental, and fortuitous, and so peripheral to the activities of defendant" it was error to submit case to the jury). While there are cases in which the telephone call at issue was actually necessary to conveying detailed facts of the alleged scheme between the conspirators, the calls at issue with respect to the three meetings charged in Counts 5 through 7 of the instant case merely set up an in-person meeting. No details of the proposed meetings are included in the calls. The substance of these calls, that is, the substance of the alleged "use" of interstate facility, is too tenuous to establish the required nexus that is required under case law. Indeed, this Court instructed that the Government must have proved that Defendant "used" the facility "with the specific intent to" commit the crime of bribery. Here, there is no evidence that Defendant knew the purpose of the meeting scheduled through each of the three uses of the telephone, and much less so with the intent to commit bribery.

Additionally, the third element of the alleged Travel Act violations requires that Defendant, subsequent to the use of the telephone, knowingly and intentionally committed the crime of bribery. For the reasons set forth above, the Government's evidence of Defendant's intentional, willful act of bribery is deficient as a matter of law. That is, the Government failed to prove that Defendant committed the state crime of bribery subsequent to the use of the telephone text setting up the meeting. The Government's evidence failed to present an "equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence."

    f.  **Insufficient Evidence of Obstruction of Justice.**

Count 8 of the indictment charges that Defendant obstructed justice by (a) sending a text to Perez telling him that campaign contributions need to be in the form of a check; and thereby (b)

12

impeding a federal grand jury investigation.

For the Government's evidence to sustain a conviction, the Government must have introduced sufficient evidence to prove a nexus between the defendant's alleged obstructive act and the obstructed proceeding. *United States v. Aguilar,* 515 U.S. 593, 600 (1995); *United States v. Singleton,* 2006 U.S. Dist. LEXIS 47961 (S.D. Tex., July 14, 2006) "This 'nexus' requirement obligates the Government to show that the alleged obstruction of justice has a 'relationship in time, causation, or logic with the judicial proceedings.'" *United States v. Singleton, supra* at *18, citing *United States v. Aguilar, supra* at 599-600. Important to the instant case, the Court held that "if the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct." *Id.* at **18-19. "*Aguilar* has been interpreted to mean that there must be proof the defendant's actions demonstrate his intent to do something that has the 'natural and probable effect' of interfering with the due administration of justice, *i.e.,* obstructing justice." *Id.* at *19.

The *Aguilar* case is instructive to the case at bar. The defendant was a United States District Judge. The FBI was investigating an alleged conspiracy to influence a pending case, suspected Judge Aguilar as being complicit in a crime, and questioned Judge Aguilar about his participation in the case and his knowledge of a secret wiretap. Judge Aguilar lied to the FBI. He was thereafter accused of obstruction of justice under 18 U.S.C. § 1503. *United States v. Aguilar, supra* at 596-99. The Supreme Court analyzed whether the Government had presented sufficient evidence of obstruction of justice to sustain a verdict, and referred to case law interpreting 18 U.S.C. § 1512 to aid its analysis. *Id.* at 599. Citing its previous case, *Pettibone v. United States,* 148 U.S. 197, 206 (1893), the Court pointed out that the Government must present affirmative proof that the defendant knew of the official proceeding that was the subject of the alleged obstructive act. *Id.* As noted by the Court, "[t]he action taken by the accused must be with the intent to influence judicial or grand jury proceedings; it is not enough that there be an intent to influence some ancillary proceeding, such as an

13

investigation independent of the court's or grand jury's authority." *Id.* In the case of Judge Aguilar, the Court found that he lacked the requisite intent to obstruct, because there was insufficient evidence that he knew that his actions were likely to affect a specific judicial proceeding. *Id.* Notably, the Court found the following:

> We do not believe that uttering false statements to an investigating agent – and that seems to be all that was proved here – who might or might not testify before a grand jury is sufficient to make out a violation of the catch-all provision of § 1503. The Government did not show here that the agents acted as an arm of the grand jury, or indeed that the grand jury had even summoned the testimony of these particular agents.

*Id.* at 600. The Government in *Aguilar* sought to rely on the same speculative theory that the Government argues in the instant case: the Government argued that Judge Aguilar "understood that his false statements would be provided to the grand jury," "that he made the statements with the intent to thwart the grand jury investigation and not just the FBI investigation," and that therefore Judge Aguillar's false statement to the FBI agents were "analogous to those made directly to the grand jury itself." *Id.* The Supreme Court rejected the Government's speculative argument, finding that a rational trier of fact could not conclude that Judge Aguilar "knew that his false statement would be provided to the grand jury," as the evidence "goes no further than showing that [Judge Aguilar] testified falsely to an investigating agent." *Id.* at 601.

This same principle was recently affirmed by the Supreme Court in *Marinello v. United States,* 138 S.Ct. 1101, 1106-09 (2018). Acknowledging that the statutory words "obstruct" and "impede" are broad, the Supreme Court nevertheless affirmed that these verbs "suggest an object" - - the perceived offender "must hinder a particular person or thing." *Id.* at 1106. Merely because a person may reasonably conclude that his/her actions could potentially affect an unidentified "official proceeding," that is not sufficient. *Id.* at 1108 (Court gives example of baby sitter who intentionally fails to keep records and document income, knowing of the risk of violating the IRS rules, is still not

in violation because baby sitter does not know of existence of particular proceeding). The Court also rejected the Government's argument that the element of "corruptly" acting cures any overbreadth problem. *Id.* The essence of the problem in assuming the perceived offender is aware of the probability of a particular official proceeding is that it "risks allowing 'policemen, prosecutors, and juries to pursue their personal predilections,' which could result in the nonuniform execution of that power across time and geographic location." *Id.* at 1108-09, citing *Smith v. Goguen,* 415 U.S. 566, 575 (1974). In sum, the Supreme Court reaffirmed that the Government must establish a nexus between the conduct and a **particularly identified** official proceeding. *Id.* at 1109. This case is relevant to the instant case because it addresses the same "nexus" argument that is applicable to the statute charged in the instant case.

Based on this principle of law, the Government's proof relative to the alleged obstruction of justice is flawed in several respects.

First, there is no evidence to prove that Defendant was aware of a "federal grand jury" investigation, which is the official proceeding that the indictment specifically charges. At most, there was proof that Defendant heard of a rumor of "a federal investigation" involving a "mesh" case and firewood. The evidence demonstrated that the "mesh" case was a nonrelated civil case that occurred five years prior and also included an element of "firewood." The Government did not introduce any evidence that Defendant was aware of a federal investigation involving Noe Perez, and much less that it included the particular "official proceeding" identified in the indictment: a federal grand jury. At least in *Aguilar,* the Government presented proof that the defendant was speaking to federal investigators, yet it was still not enough to sustain a conviction because Judge Aguilar was not aware that the FBI agents were working pursuant to an official proceeding, *i.e.,* a federal grand jury investigation.

In the instant case, the Government's evidence rests on much less than that rejected in

15

*Aguilar*:

(a) Defendant does not speak to any agent; rather, merely a rumor of "a federal investigation" (not a "federal grand jury" proceeding),

(b) the investigation related to a civil case nonrelated to Noe Perez, and

(c) there is no evidence of Defendant knowing the existence of the particularly identified official proceeding named in the indictment – a "federal grand jury."

At best, the Government's evidence sought the fact finder to speculate that Defendant knew that a "federal grand jury" was (a) actively investigating Defendant's conduct with Noe Perez, and (b) Defendant's text to Noe Perez would "obstruct" or "impede" this proceeding.

Second, there is no evidence to prove how Defendant's text to Perez obstructed, influenced or impeded a federal grand jury investigation, nor how Defendant attempted to do so. As is clear from this Court's instruction of the law, the jury must have been presented with proof beyond a reasonable doubt that Defendant intentionally and actually impeded, influenced or obstructed a federal grand jury proceeding, or intentionally attempted to do so. The Government did not present any evidence to prove how Defendant sought to do this via his text, and much less so with respect to a federal grand jury.

Third, there is no evidence to prove that Defendant acted corruptly, that is, with the specific intent to subvert or undermine the particular official proceeding identified in the indictment, the federal grand jury.

For all of these reasons, Defendant moves for judgment of acquittal notwithstanding the verdict as to Counts 1, 2, 3, 4, 5, 6, 7, and 8.

### III.     DEFENDANT'S MOTION FOR NEW TRIAL.

Rule 33(a) of the Federal Rules of Criminal Procedure provides that a court may grant a new trial in the interest of justice. Fed.R.Crim.P. 33(a). The rule divides motions for new trial into two subcategories: (1) motions based on newly discovered evidence; and (2) motions based on "other grounds." Generally, a new trial is granted upon demonstration of adverse effects on substantial rights of a defendant. *United States v. Wall,* 389 F.3d 457, 466 (5th Cir. 2004).

If a court enters a judgment of acquittal after a guilty verdict, the court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed. Fed.R.Crim.P. 29(d)(1).  Additionally, a court may deny entering a judgment of acquittal but nevertheless find that a new trial is warranted.  *See United States v. Robertson,* 110 F.3d 1113, 1117 (5th Cir. 2007); *United States v. Baker,* 544 F.Supp. 2d 522, 528 (E.D. La. 2008) (motion for acquittal under Rule 29 allows court to enter judgment of acquittal based on insufficiency of evidence, whereas Rule 33 allows court to grant new trial after weighing evidence and credibility of witnesses, which is not permitted in considering a Rule 29 motion).

For the reasons set forth above, a verdict of guilty as to all counts should not stand. The Government's case rested on a heavy emphasis on the impropriety of night-time *ex parte* communications coupled with an inference that Defendant would perceive it necessary to be paid in order to grant a PR bond. Now, considering where the Government went with its case and the emphasis it placed on "other act" evidence, it becomes clear that Defendant was significantly prejudiced by not being entitled to introduce evidence to demonstrate his state of mind as to the process of granting PR bonds, the types of cases that such bonds are routinely granted, and how Defendant would perceive that his actions in granting a PR bond was consistent with normal procedures in his and other courts. Accordingly, the jury was ultimately left subject to the prejudice

17

of the impropriety of *ex parte* communications and not knowing that the granting of PR bonds, at least in the mind of Defendant, would never be tied to an offer of a bribe.

Looking back at the totality of the presentation of the Government's evidence, particularly given Perez' admission that no agreement was in place nor necessary to ensure the receipt of a PR bond and the Government's failure of evidence as to numerous elements of the charged offenses, a new trial is warranted. Should this Court determine that a verdict of acquittal should not be entered as to one or more counts, defendant requests that he be granted a new trial.

WHEREFORE, the Defendant respectfully prays that this Court grant this Motion for Judgment of Acquittal Notwithstanding the Verdict, pursuant to Federal Rule of Criminal Procedure 29(c), or, in the alternative, that the Court enter a finding that a new trial is warranted in the interest of justice pursuant to Federal Rule of Criminal Procedure 33.

Respectfully submitted,

By: */s/ Michael McCrum*
Michael McCrum
MCCRUM LAW OFFICE
404 E. Ramsey, Suite 102
San Antonio, TX 78216
Telephone: (210) 225-2285
ATTORNEY FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2019, I electronically filed the foregoing with the Clerk of Court using the ECF system, which sent notification of such filing to all counsel of record.

By: */s/ Michael McCrum*
Michael McCrum

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, § | | |
| PLAINTIFF § | | |
| § | | |
| V. § | CASE NO. 18-CR-00115 | |
| § | | |
| RODOLFO "RUDY" DELGADO, § | | |
| DEFENDANT § | | |

**ORDER**

Came on to be considered Defendant's Motion for Judgement of Acquittal Notwithstanding the Verdict and, in the alternative, Motion for New Trial. The Court finds that the motion should be granted. Accordingly,

IT IS HEREBY ORDERED that Defendant's Motion for _____ should be granted.

SIGNED this _____ day of _____, 2019.

_____
Alfred Bennett
United States District Judge