UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| PLAINTIFF | § | |
| | § | |
| v. | § | CASE NO. 18-CR-00115 |
| | § | |
| RODOLFO "RUDY" DELGADO, | § | |
| DEFENDANT | § | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM**

DEFENDANT RODOLFO "RUDY" DELGADO, by and through his undersigned counsel, submits his response to the government's sentencing memorandum.

**I.   INTRODUCTION.**

As the Court is aware, the Court held a hearing to discuss Defendant's counsel's mistake in not filing Defendant's objections to presentence report under seal. The rule at issue was *Administrative Procedures for Electronic Filing in civil and Criminal Cases*, Southern District of Texas, January 1, 2007, ¶ 6 (C)(1)(a), which provides: *"Filing users must electronically file the following documents under seal: (a) Documents related to pre-sentence reports.* As indicated by defense counsel during hearing, the mistake was corrected in less than half an hour after filing, and nothing was contained in the filed objections that identified any matter that was not otherwise brought up during trial. There is an important reason for filing documents related to presentence reports under seal, as such reports often contain matters that are private, unsuitable and/or unreliable for public disclosure. Defendant's counsel indicated to the Court that Defendant appreciated the care that the Court took in addressing this matter.

Particularly given the nature and circumstances that gave rise to the hearing, Defendant and undersigned counsel were alarmed and shocked that government would subsequently file a public

pleading which describes uncharged, suspected conduct that clearly lacks sufficient reliable evidentiary bases. As expressed below, Defendant objects to the inferences that the Government apparently is drawing from several events. Apparently, the government did not feel restricted by the administrative rule cited above, which prohibits public disclosure of any matter related to presentence reports, and proceeded to publicly disclose all matters which it apparently feels should be considered as additional criminal conduct engaged in by Defendant. The matters raised by the government in its unsealed pleading, however, are exactly what the section entitled "Other Criminal Conduct" is intended to include in Part B of the presentence report. Indeed, the government clearly indicates in the "Introduction" portion of its memo that the memo contains what the government believes is "other evidence which shows the defendant's conduct."

Now, however, multiple media outlets, including Twitter and other social media sites, are inundated by the government's flagrant disclosure of the suspected, uncharged criminal conduct. These are matters that should have been provided to the Court under seal, particularly where the government would clearly anticipate an objection by Defendant as to his participation in the alleged conduct. Defendant requests that the Court reject the government's request that this information be considered in the sentencing of Defendant. Not only does Defendant reject the government's clear suggestion that he engaged in criminal conduct not charged in the indictment, but the government should not be allowed to circumvent the word and spirit of this Court's administrative rules that are designed to prevent the very thing that happened in this high profile case.

## II. RESPONSE TO INTRODUCTION.

Of course, Defendant continues to assert his innocence of the charges in the indictment. Although Defendant admits that he is guilty of a lack of judgment in discussing any pending case with Noe Perez outside the courtroom in the presence of opposing counsel, Defendant's had a

different perspective of his conversations with Mr. Perez. Defendant did not perceive that he was being bribed or otherwise given any benefit in exchange for his official consideration of the court matters raised by Mr. Perez. He truly believed that he would look into the case indicated by Mr. Perez and make an independent, reasoned decision as to whether the relief requested by Mr. Perez was warranted and justified. Defendant did not see Mr. Perez' payment to purchase firewood as related to Defendant's discretion relative to any court case. Mr. Perez had purchased firewood on many occasions prior to such time, regardless of any pending case. Defendant truly did not perceive the two concepts as substantively tied together, merely because a payment was made for firewood at the conclusion of a conversation initiated by Mr. Perez relative to one of his clients. Also, the evidence is clear that Defendant told Mr. Perez that he would look into each case referred to by Mr. Perez and address the matter in court.

Moreover, the government has failed to introduce any reliable evidence that there was a "decade long bribery conspiracy" between Defendant and Noe Perez. There is no evidence of any payment of any bribe or any suspicious act relative to any case in 2009, 2010, 2011, 2012, and 2013.

Additionally, with respect to the text sent by Defendant to Mr. Perez that was made the basis of the obstruction count, the evidence revealed that Defendant received notice of a possible investigation regarding his presiding over a civil case, not any criminal case discussed by Mr. Perez. Accordingly, Defendant had no reason to think that his text to Mr. Perez was related to what Defendant had heard relative to the potential investigation of the civil case.

During this entire time, it was clear that Defendant was under considerable duress and affected by personal problems. His son's dangerous and extreme addiction to inhalants was going on during the precise time that Mr. Perez visited Defendant's residence. In fact, Defendant was

seated in front of his residence when Mr. Perez, not to greet Mr. Perez, but because Defendant and his spouse would take turns sitting outside to notice whether their son would try to sneak away from the residence to purchase more inhalants. Another conversation recorded by Mr. Perez was while Defendant was clearly inebriated next to his barn. These factors are not pointed out as an excuse, but rather to demonstrate that the only evidence the government has with respect to the charged criminal conduct occurred during a time period in which Defendant was witnessing and experiencing another of his sons slowly dying.

### III.  RESPONSE TO "RELEVANT CONDUCT" PORTION OF MEMORANDUM.

The government acknowledges in the first sentence of this portion of its memorandum that the collection of evidence merely "suggests" other criminal conduct, and that the Defendant's obstruction of justice prevented the government from obtaining evidence. The overwhelming degree of investigation for years prior to alleged obstructive act completely belies the government's assertion. The government's investigation over the course of years prior to that point involved hours of aerial surveillance; a year-long surveillance by a pole camera placed adjacent to Defendant's home; scores of agents following Defendant on many occasions; a wiretap of Defendant's telephone; and interviews of scores of persons. None of this resulted in any evidence to corroborate its suspicions. It now seeks to justify this million-plus-dollars of investigation by asserting that it was unable to gather evidence prior to Defendant's text prior to his arrest. Defendant first became a judge in September 1988, yet the only evidence that the government could find was the result of it sending in Noe Perez to Defendant's residence on three occasions, one of which resulted in Defendant rejecting Mr. Perez's request, telling him he would not release his client on bond. Indeed, the Defendant clearly demonstrated that he would not do what Mr. Perez asked as to a defendant, as such defendant would not qualify for the relief requested by Mr.

Perez. Defendant also admonished Mr. Perez to not text him in court, but rather he should go through proper channels to address a case.

As to the monies paid in January, Mr. Perez had advised Defendant that he, Mr. Perez, was going to give Defendant a campaign contribution and a contribution to the foundation. That was the reason for the meeting. Mr. Perez immediately commenced speaking about a case, and Defendant indicated that it was after 5pm, and that Mr. Perez should come to the courthouse the following day to address the matter. The day after, Defendant addressed the State prosecutor, Mr. Perez, and the court probation officer in chambers. The allegations against this particular defendant was that he had failed to report for an appointment with the probation officer and was behind on performing community service hours. Defendant instructed the probation officer to set a PR bond and to set the case for a hearing two weeks later so that the defendant would be given an opportunity to comply. This situation does not bear any semblance to the 1999 incident that resulted in a reprimand.

On each of the occasions in which a bond was allowed, a prosecutor was asked by Defendant as to the position of the State of Texas, and the prosecutor indicated the State had no objection.

There is no evidence of accepting bribes, violating standards of judicial ethics with respect to any other person, or otherwise giving preferential treatment to any person.

    a. **RESPONSE TO "APPARENT BRIBE PAID BY ATTORNEY 1."**

        i. **JULY 2015.**

There is no evidence that the attorney described by the government gave any bribe or other benefit to Defendant in exchange for judicial consideration. While it is true that Defendant enjoys a close relationship with this person, the relationship did not affect any judicial act.

With respect to the birthday party that the attorney threw for himself, there were many persons there. None of these persons were known by Defendant to be prostitutes (past or present), nor was it known to Defendant that any person had a pending case in Defendant's court. The allegations of "Person 1" is a complete fabrication. Defendant left the party early. Any phone call made by Defendant had nothing to do with the allegations described by the government. The case dismissed in March 2016 was the result of the prosecutor filing a motion to dismiss the case. Moreover, a different judge (not Defendant) granted the prosecutor's motion to dismiss.

The attorney identified as Attorney 1 did not pay Defendant cash, and Defendant never had a conversation with Attorney 1 concerning Person 2's case. It should be noted that the government not only conducted a wiretap interception on Defendant's phone, but intercepted Attorney 1's phone. The government anticipated that it was going to be able to intercept suspicious or incriminating conversations between Defendant and Attorney 1, as the government's informant was involved with Attorney 1 at the time. No incriminating conversation was intercepted, because Defendant and Attorney 1 did not engage in the nefarious conduct that the government apparently accepted as whole cloth from the criminal identified as Person 1.

### i. JUNE 2017.

It is true that Attorney 1 filed a petition for divorce in Defendant's court. Neither Attorney 1 nor his wife ever filed a motion to recuse Defendant from presiding over the case. The couple settled their divorce case at mediation by the parties and their respective attorneys, and therefore Defendant had no influence in the outcome of the case. Defendant never scheduled a hearing on the divorce matter, and instructed his staff to not do so. The government's conjecture (or "reasonable inference" as it seeks to justify its conclusions) is completely unsupported and false.

It should be noted that Attorney 1 was in love with a woman who had a case pending in a court different from Defendant's court. Attorney 1 sought help from Defendant, and Defendant said no, that he would not do anything with respect to that case.

### B. RESPONSE TO "APPARENT BRIBE PAID BY ATTORNEY 2."

Defendant had an extensive hay field that drew many people to call and buy hay. Defendant received many calls in 2017 to buy hay. Attorney 2 was one of those persons, as Attorney 2 owned livestock who needed hay to eat. Picking up round bales of hay requires considerable logistical preparation as one cannot merely load a round bale of hay into a truck and then offload with ease. It generally requires a flatbed trailer that can hold numerous half-ton bales. There was nothing untoward or nefarious about this meeting. As stated above, the government was constantly monitoring every single movement of Defendant for over a year through aerial surveillance, pole camera, wiretaps, and on-ground surveillance. If there was something substantive to the government's conjecture, there would be evidence of it. The government cites to a pretrial diversion that was "given" by the court. What it fails to point out (or perhaps even realize) is that a pretrial diversion is an agreement that only the state prosecutors can make. A court cannot decide to "give" pretrial diversion. How can the government entitle this section "Apparent Bribe" where it has no evidence of a bribe being paid or consideration being given by Defendant? The government is seeing what it wants to see in an interaction between persons, yet the circumstances cut against its flawed conjecture.

### C. RESPONSE TO "ALLEGED BRIBES PAID BY ATTORNEY 3."

Defendant rejects the allegation that he received cash from Person 4. This person was interviewed by undersigned counsel during the course of the trial. Statements made by this person were inconsistent and illogical. The government's inclusion of this allegation in a public pleading

is unwarranted. There is absolutely no corroboration for this person's allegations years after the fact, and, conversely, there substantive flaws with his story.

### D. RESPONSE TO "UNDISCLOSED IMPROPER GIFTS FROM ATTORNEY 4 AND ATTORNEY 5."

Defendant rejects the suggestion that he received any benefit in exchange for his judicial act. The civil matter referred in this section was a matter resolved by attorneys as a result of settlement negotiations that did not involve Defendant. Defendant has a long-standing friendship with the attorneys referenced in this section. The trips described are not related to any legal matter. Rather, they are the result of friends who have spent considerable time with each other's families. Defendant does not believe they are matters which require disclosure under the judicial canons that govern his position.

Defendant respectfully requests that the Court not consider the government's unsupported theories of culpability.

Respectfully submitted,

 /s/ Michael McCrum
Michael McCrum
State Bar No. 13493200
McCrum Law Office
404 E. Ramsey, Suite 102
San Antonio, TX 78216
(210) 225-2285
(210) 225-7045 (fax)
**ATTORNEY FOR DEFENDANT RODOLFO DELGADO**

**Certificate of Service**

I hereby certify that on the 23nd day of September 2019, a copy of the above and foregoing was delivered to United States Probation Office and to the United States Attorney's Office via the CMF electronic filing system.

    /s/ Michael McCrum
Michael McCrum